LOWY AND DONNATH, INC., Appellant, v CITY OF NEW YORK et al., Defendants, and T. MORIARTY & SON, INC., Respondent.

First Department, December 27, 1983

**APPEARANCES OF COUNSEL**

*Daniel Diamond* for appellant.

*Steven G. Rubin* for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

Lowy & Donnath, Inc., appeals from the dismissal, after a nonjury trial, of its complaint, which had sought to recover $19,043.21, representing the reasonable value of labor and materials furnished to T. Moriarty & Son, Inc., the general contractor under a public improvement contract with the City of New York.[*]

On or about August 14, 1979, the City of New York, acting by the New York City Transit Authority, and Moriarty entered into a time and material contract with an upset price of $744,400 for the rehabilitation of emergency wells in an area located at Lenox Avenue and 122nd and 123rd Streets in Manhattan. In such contracts the Transit

---

[*] Although the City of New York and the New York City Transit Authority were originally named as defendants, the complaint was dismissed as against them before trial for failure to file a *lis pendens*. That dismissal is not a subject of this appeal.

Authority apparently acts as the principal, monitoring the work, approving pay requisitions and making payment. By purchase order dated January 31, 1980, Moriarty subcontracted the electrical work to Lowy. The subcontracted work was described in the purchase order as follows:

"In strict accordance with contract plans and contract specification for contract #C-30398 — Emergency Wells at Lenox Avenue, New York City Transit Authority, provide all labor, material and equipment necessary to supply and install all electrical work included in this contract for four (4) pump locations at locations as referenced above.

"T. Moriarty & Son, Inc. will supply water starters and disconnect switches for above, only.

"Kindly submit any and all plans, cuts, dwgs. etc. as is necessary along with necessary certificates of insurance required under this contract.

"This project is Tax Exempt. Certificate attached."

The purchase order, which had an upset price of $35,800, was silent as to when payment was due.

Trial Term found that Lowy performed the work and furnished the materials contemplated by the purchase order in accordance with the plans and specifications of the prime contract. Moreover, as the record reflects and Trial Term found, the Transit Authority's engineer approved the work. Over a span of 10 months, as work progressed, Lowy submitted four invoices totaling $28,043.21 to Moriarty which, in turn, submitted payment requests in Lowy's behalf to the Transit Authority. Of the requests submitted by Moriarty only the sum of $9,000 had been approved and paid by the Transit Authority as of the date of trial, leaving a balance due of $19,043.21.

Although Moriarty has been paid $836,938.77, which is $92,538.77 above the contract price, it has refused to pay the balance due Lowy solely because the Transit Authority has not completed its audit of all the bills submitted by it. When the audit is completed the Transit Authority, as per the terms of its contract with Moriarty, will have to request additional funds from the board of estimate since the payments to date are in excess of 5% over the original contract appropriation. It should be noted that, although

Lowy's last invoice was dated April 7, 1981, Moriarty did not submit a final payment request in its behalf to the Transit Authority until February 3, 1982, approximately 10 months later. More than two and one-half years have now elapsed since Lowy completed the electrical work.

Notwithstanding its finding that the work for which Lowy had not been paid complied with the prime contract's plans and specifications and was approved, and that the reasonable value of the work was $28,043.21, Trial Term held that the action was premature because the purchase order incorporated all the terms of the prime contract which, *inter alia,* required a Transit Authority time and material audit of all payment requests submitted in behalf of a subcontractor. Since we find, contrary to Trial Term, that the purchase order was subject to the prime contract only to the extent that the electrical work performed thereunder be "[i]n strict accordance with contract plans and contract specifications", and not otherwise, we reverse and direct the entry of judgment in Lowy's favor.

The purchase order does not contain any language suggesting that payment for the electrical work was subject to prior audit, verification and payment to Moriarty. The only reference to the prime contract is to its plans and specifications, with which the electrical work had to comply. Moriarty, which prepared the purchase order on its own form, could have retained the right to withhold payment from Lowy until the Transit Authority had completed its audit and remitted the necessary funds, by inclusion of appropriate language in the contract. (See, e.g., *Sturdy Concrete Corp. v NAB Constr. Corp.,* 65 AD2d 262; *Schuler-Haas Elec. Corp. v Aetna Cas. & Sur. Co.,* 49 AD2d 60, affd 40 NY2d 883; *E. W. Hoffman, Inc. v Aetna Cas. & Sur. Co.,* 48 AD2d 695.) It did not, however. As already noted, the purchase order did not contain any provision as to when payment was to be made. Where a contract for the payment of money does not specify the time of payment, payment is due immediately upon completion of the work. (See *Bradford, Eldred & Cuba R. R. Co. v New York, Lake Erie & Western R. R. Co.,* 123 NY 316, 326-327.)

In the absence of a specific and unqualified provision in the subcontract conditioning payment on an event certain,

such as owner approval and payment of a contractor's requisition, or the incorporation of such a provision by reference to another contract, the contract documents should not be construed as intending such a result. (*Schuler-Haas Elec. Corp. v Aetna Cas. & Sur. Co., supra,* p 64.) Since every contract carries with it the implied obligation of good faith and fair dealing (*O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 54-55; *Wigand v Bachmann-Bechtel Brewing Co.,* 222 NY 272, 277), "there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (*Kirk La Shelle Co. v Armstrong Co.,* 263 NY 79, 87). Thus, a contract construction which places one party at the mercy of the other should be avoided, if possible. (*Simon v Etgen,* 213 NY 589, 595; *Geller v Tow & Proctor Securities Corp.,* 261 App Div 773, 776; *Price v Spielman Motor Sales Co.,* 261 App Div 626.)

Deferral of payment to Lowy pending completion of a Transit Authority audit would put Lowy at the mercy of Moriarty, which has already been paid 10% above the contract's upset price. As it is, Moriarty delayed submission of a final payment request for Lowy for at least 10 months.

We note in passing that the provision for a time and material audit with respect to subcontracted work is limited to "[a]ny lump sum agreements between the Contractor and his Subcontractors." Although, in light of our determination, we need not reach the issue, we do not believe that such a clause would apply to the subcontract here, even if the purchase order incorporated all the terms of the prime contract, since, as Trial Term properly found, the subcontract was not a lump-sum agreement but a time and materials contract.

Accordingly, the judgment of the Supreme Court, New York County (ORLANDO, J.), entered April 19, 1983, which dismissed the complaint against defendant Moriarty after trial, should be reversed, on the law, with costs and disbursements, the complaint reinstated and judgment entered in favor of plaintiff Lowy against Moriarty for $19,043.21 plus the appropriate interest.

Kᴜᴘꜰᴇʀᴍᴀɴ, J. P., Rᴏss, Bʟᴏᴏᴍ and Aʟᴇxᴀɴᴅᴇʀ, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 19, 1983, unanimously reversed, on the law, the complaint reinstated and judgment entered in favor of plaintiff-appellant against defendant-respondent for $19,043.21 plus the appropriate interest. Appellant shall recover of respondent $75 costs and disbursements of this appeal.