■ BARRETT PAVING MATERIALS, INC., Appellant, v UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Respondents. —Yesawich, Jr., J. Appeal from an order of the Supreme Court at Special Term (Zeller, J.), entered July 17, 1985 in Broome County, which denied plaintiff's motion for summary judgment.

In the fall of 1982, the Dormitory Authority of the State of New York (Authority) contracted with defendant Murray Walter, Inc. (Walter), to construct dormitories at the State University of New York at Binghamton. The project required concrete of two different strengths (3,000 PSI and 4,000 PSI)* which plaintiff agreed to supply to Walter, the general contractor. Plaintiff delivered concrete over a 13-month period, from June 1, 1983 to July 10, 1984.

Problems arose early in June 1983, when tests of the concrete revealed that its strength failed to meet the contract specifications. This occasioned regular meetings throughout the summer of 1983 between plaintiff, Walter and the Authority. In one of the frequent exchanges of correspondence, the Authority declared that it would hold Walter accountable for any expense associated with replacing or removing substandard concrete. Five weeks later, by letter dated August 17, 1983, Walter, in turn, gave plaintiff like notice; at that time, testing of the concrete revealed marginal and low compressive strengths. The minutes of an August 3, 1983 job meeting, attended by Walter and the Authority's representative, disclosed that the architect recommended acceptance of below-

---

* PSI stands for pounds per square inch and measures the compressive strength of concrete.

strength concrete. In a mid-September 1983 correspondence with plaintiff, Walter sought firm assurance from plaintiff that future batches of concrete would be sufficiently strong. Plaintiff, which had experimented with the concrete mix formula throughout the summer, gave that assurance on September 28, 1983. Other than an episode in late October 1983, when plaintiff admittedly provided a substandard batch of concrete, the record reveals no problems with the quality of the concrete over the remaining 9 to 10 months of plaintiff's involvement with the project.

Plaintiff billed Walter monthly for the concrete and was apparently paid $29,707; however, $68,960.13, plus interest, remains unpaid. Because the contract between the Authority and Walter provides that payment by the Authority, in part or in full, does not relieve the contractor of noncompliance with the contract documents, Walter considered itself potentially liable to repair or replace the low-strength concrete. As the Authority had not agreed to waive this right, in May and September of 1984 Walter proposed that, as a precondition of final payment to plaintiff, the latter guarantee the concrete for a term of two years from the date of its final acceptance by the Authority. Plaintiff refused and instituted the instant action against Walter and its surety to recover the balance due plus interest and punitive damages. Counterclaims asserting that the concrete was defective and that plaintiff failed to deliver concrete meeting the contract's specifications were interposed, and substantial damages representing the remedial steps which may be required to cure the defects in the concrete were sought. From Special Term's denial of plaintiff's motion for summary judgment, this appeal ensued.

It is plaintiff's contention that since Walter accepted, or failed to timely reject, the concrete, there are no material triable fact issues prohibiting granting summary judgment. We disagree. The parties agree that UCC article 2 controls. Walter maintains that it effectively rejected the concrete within a reasonable time after delivery (see, UCC 2-606 [1] [b]; 2-602 [1]). The innate nature of concrete is such that it precludes a testing of its strength until well after it has hardened. Walter submitted proof of an industry practice of twice testing the concrete, once after seven days and again after 28 days of curing. As soon as Walter learned of the low strength, it expressed dissatisfaction, along with the Authority, and warned plaintiff that it would be held answerable if the Authority ultimately disapproved the concrete or made Walter correct the defect. Walter considered this course pref-

erable to requiring plaintiff to remove and replace the hardened concrete. The many complaints made by Walter and the obvious dilemma associated with rejecting hardened concrete raise an issue of fact regarding both the reasonableness of the time for rejecting the concrete and the manner of doing so.

Plaintiff's claim that Walter accepted the goods, by engaging in acts "inconsistent with the seller's ownership" (UCC 2-606 [1] [c]), is predicated on Walter's use of the concrete in the construction and on the subsequent sale of the finished project to the Authority. The first argument is unpersuasive since testing of the concrete's strength in place in the construction was impossible before its use. And with respect to the second argument, while it is true that the Authority has acknowledged substantial completion of the project and has paid Walter, it has not relieved Walter of liability for defective work. As Special Term observed, "acceptance of the concrete by the * * * Authority is not acceptance by Walter", and the fact that Walter has been paid is, if not irrelevant, certainly not dispositive of whether payment is now due plaintiff from Walter (see, Lowy & Donnath v City of New York, 98 AD2d 42, 44, affd 62 NY2d 746).

Moreover, as authoritative scholars have recognized, courts should be hesitant to find acts inconsistent with the seller's ownership where the parties are attempting to resolve a complex problem (see, White and Summers, Uniform Commercial Code § 8-2, at 299-300 [2d ed]). Here, an immediate demand that substrength concrete be removed would have been an extreme response, particularly given the possibility that the Authority would not object unless the concrete later proved to be inadequate. On this record, we are unable to say, as a matter of law, that Walter's exercise of control over the concrete was inconsistent with a rejection. In sum, despite Walter's use of the concrete, its conduct in apprising plaintiff of the concrete's deficiencies and demanding assurances and a guarantee, gives rise to a factual question as to whether there indeed was an acceptance. There being triable issues of fact, the drastic remedy of summary judgment was properly withheld (see, Andre v Pomeroy, 35 NY2d 361, 364).

Order affirmed, with costs. Kane, J. P., Main, Weiss, Mikoll and Yesawich, Jr., JJ., concur.