[705 NYS2d 30]

BIJAN DESIGNER FOR MEN, INC., Respondent-Appellant, v FIRE-
MAN'S FUND INSURANCE COMPANY, Appellant-Respondent.

First Department, March 9, 2000

## APPEARANCES OF COUNSEL

*Robert M. Horkovich* and *John Gasior* of counsel (*Anderson Kill & Olick, P. C.,* attorneys), for respondent-appellant.

*Frederic R. Mindlin* and *Mark J. Weber* of counsel (*Mound, Cotton & Wollan,* and *Clausen Miller, P. C.,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

The question presented by this appeal concerns the meaning of the phrase "manufactured by you" in the context of a commercial insurance policy. We conclude that under the terms of the policy plaintiff did not manufacture the clothing destroyed by a fire, notwithstanding that a designer such as plaintiff may be loosely considered a manufacturer within the parlance of the fashion industry.

Plaintiff (Bijan) is a designer and retailer of high-fashion men's clothing. It operates two retail stores, one at the St. Regis Hotel in Manhattan and the other in Beverly Hills, California. On June 1, 1996, a fire at the St. Regis location caused extensive damage to Bijan's inventory, an inventory consisting primarily of clothing it designed.

At the time of the fire, Bijan was insured under a commercial insurance policy (the policy) issued by defendant (Fireman's Fund), which covered this loss. During the adjustment of Bijan's claim, a dispute arose concerning the valuation of Bijan's stock. This dispute was centered around paragraph K.3 of the policy, which provides the following.

"Stock will be valued as follows:

"a. Stock that is supplies or raw materials will be valued at Replacement Cost.

"b. Stock that is work-in-progress will be valued at the cost of materials, labor, supplies, and overhead incurred.

"c. Stock that is *finished goods and manufactured by you* will be valued at the price for which it could have been sold if there had been no loss, less discounts and unincurred expenses.

"d. Stock that is *finished goods that you have purchased from others for resale* will be valued at Replacement Cost" (emphasis added).

According to Bijan, its stock constituted finished goods that Bijan, itself, had manufactured. Therefore, Bijan claimed entitlement to approximately $10,000,000, which, pursuant to subparagraph c, is the price for which the goods could have been sold had there been no loss. Fireman's Fund, on the other hand, argued that, while the damaged stock constituted finished goods, the stock was purchased by Bijan from others for resale, not manufactured by it. Hence, pursuant to subparagraph d, Fireman's Fund asserted that it was only required to pay Bijan the replacement cost, namely, $1,600,000. Fireman's Fund paid such amount and then commenced this action seeking a declaration that the stock destroyed in the fire was not manufactured by Bijan. In turn, Bijan asserted counterclaims seeking to recover the resale value of the stock.*

Prior to trial, Fireman's Fund moved for summary judgment asserting that the stock at issue had not been manufactured by Bijan. Fireman's Fund pointed to Bijan's essentially uncontroverted role in the production of its clothing line. Thus, Bijan conceives and designs the clothing it sells, selects the materials from which such clothing is made, and provides detailed specifications for the manufacture of the clothing. However, the actual physical production of the clothing is carried out, not by Bijan, but by Italian clothing factories with which Bijan contracts, although Bijan's personnel sometimes visit the factories to provide oversight. It is further undisputed that title to the goods does not pass to Bijan until it receives and accepts, in the United States, the finished product, with the accompanying invoice. Therefore, Fireman's Fund argued that under the unambiguous terms of the insurance policy, Bijan was only entitled to recover the replacement value, not the resale value of the stock.

Bijan opposed the motion based on the opinion of Professor Irwin A. Kahn of the Fashion Institute of Technology, who maintained that Bijan is considered to be a "manufacturer" of clothing as that term is colloquially used in the fashion and apparel business. In this connection, he noted that "the most significant activity related to the manufacture of fashion merchandise is conception and specification of garment styles."

Professor Kahn further relied on two textbooks used to teach courses at the Fashion Institute. By way of example, one textbook indicated that, although the United States Census

---

* During trial the caption of the action was amended to style Bijan as the plaintiff and Fireman's Fund as the defendant.

classified apparel manufacturers as businesses that buy fabric and assemble garments in factories that they own, in reality today few large firms commonly considered apparel manufacturers would qualify as such under the census terminology (Jarnow & Dickerson, Inside the Fashion Business, at 495 [Merrill/Prentice Hall, 6th ed 1997]).

Fireman's Fund countered that it is irrelevant whether or not Bijan may be loosely characterized as a manufacturer in the fashion industry. The term used in the relevant contractual provision, that is paragraph K.3 (c) of the policy, was "manufactured by you," and that term unambiguously referred to the physical manufacturing of the stock, which Bijan admittedly did not perform.

Supreme Court declined to decide the summary judgment motion. Instead, the court announced that it would reserve decision on the motion until after hearing the trial testimony of Bijan's expert on the meaning of the term manufacturer as used in the apparel industry. At the close of the evidence, which included testimony by industry experts for both parties, Supreme Court denied Fireman's Fund's motion for summary judgment, as well as its motion for a directed verdict. In so doing, Supreme Court determined that paragraph K.3 (c) was ambiguous as to whether the term "manufactured by you" was a reference to manufacturing in its commonly understood sense, or a reference to manufacturing in the sense advocated by Bijan.

The sole interrogatory submitted to the jury at the conclusion of the trial, which had been bifurcated into liability and damage phases, asked, "Was the stock damaged in the fire in [Bijan's St. Regis] location manufactured by Bijan * * * ?" The jury answered "Yes." After the verdict was rendered, Fireman's Fund moved for judgment in its favor as a matter of law, or, in the alternative, for a new trial, pursuant to CPLR 4404 (a). This motion, like the summary judgment motion and motion for a directed verdict, was denied.

We conclude that Supreme Court erred and that judgment, as a matter of law, should have been entered in favor of Fireman's Fund based upon the unambiguous terms of the insurance policy.

It has long been the rule that a "contract must be read as a whole in order to determine its purpose and intent, and * * * single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part. (*Atwater & Co.* v. *Panama*

*R. R. Co.,* 246 N. Y. 519; *Becker* v. *Frasse & Co.,* 255 N. Y. 10.) Words considered in isolation may have many and diverse meanings. In a written document the word obtains its meaning from the sentence, the sentence from the paragraph, and the latter from the whole document" (*Eighth Ave. Coach Corp. v City of New York*, 286 NY 84, 88-89). Bearing these fundamental principles in mind, it is evident that the ambiguity perceived by Supreme Court arose as a result of a restrictively focused and isolated analysis of paragraph K.3 (c). Supreme Court failed to recognize that the purported ambiguity, if it exists, withers when subparagraph c is read in its contextual setting.

Examination of paragraph K.3 of the policy shows that it sets forth a menu representing the spectrum of possibilities in valuing an insured's stock. That menu commences with. the valuation of stock consisting of raw materials (subparagraph a), progresses to stock consisting of work-in-progress, which, of course, consists of raw materials in the process of being assembled but which are not yet in finished form (subparagraph b), and culminates with finished goods manufactured by the insured, namely, Bijan (subparagraph c).

What this reveals is that the reference in subparagraph c to "finished goods * * * manufactured by you," plainly contemplates the concept of manufacturing in its ordinarily understood sense, i.e., the fabrication of a final product through the use of raw materials (*see*, Merriam-Webster's Collegiate Dictionary 709, 936 [10th ed 1997] [defining "manufacture," *inter alia*, as "something made from raw materials by hand or by machinery"]). This follows because subparagraph c is contextually the culmination of the two preceding subparagraphs, which as noted speak of raw materials and work-in-progress on those raw materials. It necessarily develops, therefore, that "finished goods * * * manufactured by you" is a reference to goods resulting from actual, physical work performed on raw materials.

Further support for this conclusion emerges from the juxtaposition of subparagraph c with subparagraph d. As previously indicated, subparagraph d provides: "Stock that is finished goods that you have purchased from others for resale will be valued at Replacement Cost." The construction advocated by Bijan would create an anomalous situation in which Bijan's stock would fall within the parameters of both subparagraphs c and d.

In this regard, applying Bijan's loose definition of manufacturing, its stock would fall under subparagraph c because, as

explained by Professor Kahn, it is a manufacturer as that term is colloquially used in the apparel industry. However, since Bijan has effectively conceded that the clothing it designs are "finished goods" at the time it receives and accepts the clothing from foreign manufacturers, the stock would also be "finished goods * * * purchased from others" under subparagraph d. Hence, the construction advocated by Bijan would create a conflict between subparagraphs c and d. We cannot accept that the parties intended such a result or that such a result is required by virtue of the colloquial reference to Bijan as a manufacturer in apparel industry circles. Moreover, the outcome Bijan advocates would violate the rule that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect" (*Proyecfin de Venezuela v Banco Indus. de Venezuela*, 760 F2d 390, 395-396; *see, G&B Photography v Greenberg*, 209 AD2d 579, 581).

Bijan nevertheless claims that at the end it must be considered to have manufactured the subject clothing because designing a garment, selecting the materials to be used, and providing specifications to factories, are the most important aspects of creating clothing. The level of importance of an activity, however, is not what defines that activity. By way of analogy, an architect's role in the construction of a building is obviously of central importance. Beyond designing a building that is structurally sound and aesthetically pleasing, the architect will often be required to conduct site visits to assure that the building is being constructed in accordance with the plans. However, no matter how central the architect's role to the successful completion of the building, it could not reasonably be argued that the architect is the builder. By a parity of reasoning, Bijan, as the "architect" of its clothing line, does not manufacture the clothing.

Finally, it must be recognized that Bijan did not appear to consider itself the manufacturer of its clothing line. Thus, Bijan's financial statements for 1994 and 1995 describe it as an "exclusive retail apparel and accessory boutique;" for the two years prior to the fire Bijan did not claim that any of its inventory consisted of raw materials; its combined balance sheet for 1995 showed no manufacturing plants or equipment and claimed no expenses related to the manufacture of goods; its 1995 tax return indicated no expense for raw materials, plant, equipment or labor with regard to the goods sold and claimed no deduction for depreciation of manufacturing plant or equip-

ment; and, for the 13 years prior to the instant fire loss, Bijan identified itself on all tax filings as a retailer. Interestingly, it was not until after the fire that Bijan changed its identification on tax filings to that of a manufacturer.

In sum, the insurance contract at issue was clear and unambiguous. Finished goods that were purchased by Bijan from others are compensable under the policy at replacement cost. As Bijan did not manufacture its stock, judgment should have been entered as a matter of law in favor of Fireman's Fund.

Accordingly, the judgment of the Supreme Court, New York County (Paula Omansky, J.), entered December 30, 1998, on a jury verdict for plaintiff Bijan after trial, should be reversed, on the law, without costs, that judgment vacated, and a declaration entered in favor of defendant Fireman's Fund, declaring that Bijan's stock damaged in the 1996 fire was not manufactured by Bijan within the meaning of the subject insurance policy, and the matter remanded to Supreme Court for an assessment of damages, if any. Cross appeal by Bijan from the same judgment to the extent that the judgment failed to award attorney's fees should be dismissed, without costs, as academic.

SULLIVAN, P. J., NARDELLI, WALLACH and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, entered December 30, 1998, on a jury verdict for plaintiff Bijan after trial, reversed, on the law, without costs, that judgment vacated, and a declaration entered in favor of defendant Fireman's Fund, declaring that Bijan's stock damaged in the 1996 fire was not manufactured by Bijan within the meaning of the subject insurance policy, and the matter remanded to Supreme Court for an assessment of damages, if any. Cross appeal by Bijan from the same judgment to the extent that the judgment failed to award attorney's fees dismissed, without costs, as academic.