(January 4, 2001)

■ HSBC Bank USA, Appellant, v National Equity Corp., Respondent. [719 NYS2d 20] —Orders, Supreme Court, New York County (Barry Cozier, J.), entered June 29, 2000, which, respectively, insofar as appealed from, denied without prejudice HSBC Bank USA's (HSBC) motion for an order of seizure of certain collateral pursuant to CPLR article 71, and granted defendant National Equity Corp.'s cross-motion to stay this action pending resolution of an arbitration proceeding between the same parties concerning the claim for the underlying debt and to compel HSBC to submit the claims asserted in this action to arbitration in that proceeding, unanimously reversed, on the law, without costs, the motion for an order of seizure granted, the cross-motion denied and the matter remanded to Supreme Court for further proceedings, including settlement of an order of seizure.

HSBC's predecessor-in-interest (Republic National Bank of New York now merged with HSBC), acting as agent for a syndicate of lenders, entered into a Revolving Credit Agreement with defendant National Equity Corp. (NEC) for a principal sum of $20 million, extended on a revolving basis, which NEC would then re-loan to its own customers. This debt was secured pursuant to a Continuing General Security Agreement, a Collateral Assignment of Notes, and a Collateral Assignment of Security. The collateral was defined to include all promissory notes, security agreements, and guarantees evidencing and securing NEC's own loans to its own customers. NEC was thereby obligated to deliver all such collateral to HSBC prior to, as well as subsequent to, an Event of Default under the Revolving Credit Agreement. The Revolving Credit Agreement was subsequently amended to provide for, *inter alia*, a release of claims against HSBC.

By letter dated May 1, 2000, HSBC notified NEC that an Event of Default had occurred. HSBC then demanded full and immediate payment of all outstanding indebtedness, including $16 million in principal still outstanding under the Revolving Credit Agreement. By demand dated June 7, 2000, HSBC commenced an arbitration proceeding against NEC and others seeking to recover NEC's indebtedness under paragraph 8.6 of the Revolving Credit Agreement. Paragraph 8.6 (a) provides, in pertinent part, that the lender may elect, at any time prior to the commencement of a judicial proceeding, to submit any disputes under the agreement or related disputes to arbitration, but by so electing the lender is not thereby required to submit all disputes between the parties to arbitration. More specifically, paragraph 8.6 (b) states that "[n]o provision of, nor exercise of rights under, subsection 8.6 (a) shall limit the right of any party * * * to request and obtain from a court having jurisdiction before, during or after the pendency of any arbitration, provisional or ancillary remedies and relief including but not limited to injunctive or mandatory relief or the appointment of a receiver. The institution and maintenance of an action or judicial proceeding * * * shall not constitute a waiver of the right * * * to submit the Dispute to arbitration if [the party] would otherwise have such right."

On June 8, 2000, HSBC commenced this article 71 action against NEC for recovery of the collateral. The complaint alleged that the action had been commenced solely to obtain the order of seizure and provisional relief specified in the complaint, and that the underlying dispute regarding the debt itself would be resolved in the arbitration proceeding. The complaint, alleging HSBC's right to possession of the collateral under the various agreements noted above, requested judgment awarding HSBC possession of the collateral, and directing all NEC personnel to deliver collateral in their possession, and to allow HSBC to enter NEC's offices for the purpose of securing and removing the collateral and reviewing NEC's books and records to this end, pursuant to HSBC's rights under the Security Agreement. Supreme Court signed an order to show cause directing NEC to show why an order of seizure should not be entered providing for such seizure.

NEC, arguing that CPLR 7502 (c) authorized a court to issue only an injunction or an order of attachment in connection with an arbitrable controversy but not an order of seizure, then cross-moved to dismiss or stay the judicial action and to compel HSBC to submit all claims, including its asserted right to seize the collateral, to the arbitration panel. NEC did not

dispute that the agreement gave HSBC the right to seek a judicial order of seizure, but contended that the agreement could not confer such a provisional remedy by right since it was not authorized by statute. HSBC countered that such a restrictive application of CPLR 7502 (c) applied only when all disputes between the parties had been submitted to arbitration, but was inapplicable, as in the present case, when the agreement specifically preserved a party's right to seek judicial relief, such as for an order of seizure, without prejudice to its right to also arbitrate other disputes, such as that regarding the underlying debt and purported defenses thereto.

Although the court found that HSBC was entitled to an order of seizure, it nevertheless stayed the judicial proceeding and compelled arbitration on the basis that paragraphs 8.6 (a) and (b) conflicted, rendering the agreement ambiguous. The court concluded that by filing the arbitration first, HSBC made its election, and that the provisional remedy sought in the judicial forum, seizure of collateral, was so related to the dispute over the underlying debt that to allow for seizure prior to final resolution of the extent of the indebtedness would effectively result in a ruling determining the merits and might lead to a result inconsistent with the eventual outcome of the arbitration proceeding.

That analysis, though, clearly ignores the plain meaning of the agreement entered by the parties. When the arbitration clause set forth in paragraph 8.6 (a) is read together with the qualifying provisions set forth in paragraph 8.6 (b), it is clear that HSBC retained the right to commence a judicial proceeding seeking seizure, as a provisional remedy, intended to secure its ultimate recovery of the underlying debt, notwithstanding referral of the debt dispute to arbitration. It is an elementary rule of contract construction that clauses of a contract should be read together contextually in order to give them meaning (*Bijan Designer For Men v Fireman's Fund Ins. Co.*, 264 AD2d 48, 51-52). However, the court's finding that these clauses conflicted resulted from reading each paragraph apart from the other. Rather, the rule is that " 'where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect' " (*Bijan, supra*, at 53, quoting *Proyecfin de Venezuela v Banco Indus. de Venezuela*, 760 F2d 390, 395-396), a result reasonably attainable in this case. Moreover, the motion court erred when it viewed HSBC's exercise of its rights under paragraph 8.6 (b) as effectively determining the merits of the debt dispute. The present article 71 action properly concerns only the issue of which party has a

superior possessory right to the collateral (*see, G & S Quality v Bank of China*, 233 AD2d 215), a right grounded in the subject agreement, rather than the ultimate merits of the dispute. HSBC's posting of the required undertaking (CPLR 7102 [e]) will ensure that NEC's rights are protected in the event it prevails in the arbitration proceeding. Further, arbitration clauses, as contractual agreements, must be enforced according to their terms (*Matter of Cullman Ventures [Conk]*, 252 AD2d 222, 228), parties may validly agree to exclude some disputes from the scope of arbitration clauses (*Volt Information Sciences v Board of Trustees of Leland Stanford Jr. Univ.*, 489 US 468, 478), and it cannot be said that, reading paragraphs 8.6 (a) and (b) together, the parties agreed to arbitrate whether an order of seizure should be granted as a provisional remedy. As has been noted, arbitration "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit" (*Volt Information Sciences, supra*, at 479).

As such, HSBC is correct that it was free, under the contract, and within the statute, to seek judicial relief as to the provisional remedy while, simultaneously, seeking arbitration of the underlying dispute. Accordingly, we grant the motion for an order of seizure and remand to Supreme Court for settlement of this order and to determine which specific collateral should be seized and the amount of the undertaking. We have considered NEC's remaining contentions and find them to be unavailing. Concur—Sullivan, P. J., Rosenberger, Tom, Andrias and Wallach, JJ.