Matter of Von Steen v Musch (2004 NY Slip Op 24021)

Matter of Von Steen v Musch

2004 NY Slip Op 24021 [3 Misc 3d 207]

January 28, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, May 19, 2004

[*1]
In the Matter of Steven Von Steen et al., Petitioners,
v
Elisabeth Musch, Respondent.
Supreme Court, New York County, January 28, 2004

APPEARANCES OF COUNSEL

Salans, New York City (Peter J. Gallagher of counsel), for petitioners. Brian J. Neville, New York City, for respondent.

{**3 Misc 3d at 207} OPINION OF THE COURT

Shirley Werner Kornreich, J.
This is a special proceeding pursuant to CPLR 7502 (b) and 7503 (b), seeking a stay of arbitration. On or about April 14, 2003, Elisabeth Musch, a client of Steven Von Steen, an investment advisor, sent petitioners a demand for arbitration and filed {**3 Misc 3d at 208}a statement of claim with the American Arbitration Association (AAA). Petitioner commenced this proceeding on June 18, 2003, serving Musch's attorney by personal service that day.

Facts

On September 11, 2000, petitioner Von Steen Asset Management, Inc. and Musch entered into an investment management agreement whereby Musch appointed petitioners to act as her investment advisors under its terms. (Verified petition to stay arbitration 2.) Musch claims that "her risk tolerance was very limited given her desire to retire soon[.]"[FN1] 

(Id., exhibit B, 7.) Musch opened two investment accounts, totaling more than $950,000, at Prudential Securities, Inc. in October 2000 for which petitioners acted as investment advisors. (Id., exhibit B, ¶¶ 3, 5.) Musch avers that Von Steen completed these new account forms on her behalf, resulting in account profile inaccuracies regarding, inter alia, Musch's risk tolerance and investment objectives. (Id., exhibit B, ¶ 6.)
Beginning in November 2000 until the accounts were closed, Prudential mailed monthly account statements to Musch, which identified all account activity, all investments held in the accounts and the accounts' performance. (Id. 4.) The monthly statements contained a pie chart, labeled "Asset Composition" depicting the percentage of the account invested in stocks, [*2]bonds and cash. The pie charts in the December 2000 statements show that 98% of one account and 99.6% of the other were invested in equities. (Id. exhibit D.) The January 2001 statements reflect investments of 100% and 99.8% in equities for the accounts. (Id. exhibit E.) Additionally, the account statements contain the following clause: "This statement is an official record of your account. All account statements sent to you shall be considered binding upon you if not objected to in writing within ten days." (Id., exhibit D, ¶ 7.)
Without specifying dates, Musch alleges that she frequently told Von Steen that "she could not afford to and was completely unwilling to sustain losses of her savings" and that Von Steen assured her that she need not worry about losses. (Id., exhibit B, ¶ 8.) Musch claims that as her accounts lost value, she informed Von Steen that she wanted to sell her positions and limit her losses, but that he "was insistent she not sell[.]" (Id., exhibit B, ¶ 9.) Respondent claims that petitioners "completely disregarded {**3 Misc 3d at 209}all concepts of suitability and asset allocation . . . [by] completely concentrat[ing] her in equities that were unsuitable for her stated investment objectives." (Id., exhibit B, 8.) She further asserts that "[a] complete concentration in equities . . . was not only negligent, [but] was grossly negligent." (Id.) Overall, Musch lost over $650,000approximately 70% of her savings"from November, 2000 to late 2002." (Id., exhibit B, ¶ 14.)
Musch filed her demand for arbitration as per the agreement between herself and petitioners. The agreement provides for arbitration in the event of a dispute, as follows:
"If any dispute or disagreement arises under this Agreement which cannot be resolved, such matter will be submitted to arbitration before the [AAA] in New York, New York, in accordance with its Commercial Arbitration Rules. The decision of the arbitrators will be conclusive and binding on Client and Advisor and on their respective personal representatives, successors and assigns." (Investment management agreement 16.)
The agreement further provides that it "will be governed by and construed in accordance with the laws of the State of New York." (Id. 19.) Musch's statement of claim to the AAA seeks recovery on the following causes of action: (1) unsuitable recommendations; (2) fraud and misrepresentation; (3) violation of federal securities laws; (4) violation of industry rules and for breach of contract; (5) breach of fiduciary duty for violations of, inter alia, standards of the security industry and rules of the Securities Exchange and Commission and National Association of Securities Dealers (NASD); (6) common-law fraud in the states of Florida and Washington; (7) violation of Florida and Washington statutes; (8) negligence and gross negligence; (9) respondeat superior and agency principles as to Prudential's responsibility for petitioners' violations of federal securities laws; and (10) punitive damages.
Petitioners move to stay the arbitration claiming both that it is time-barred and that it improperly seeks punitive damages, issues petitioner argues are reserved to the courts, not the arbitrators. Respondent opposes this motion, submitting an affirmation in opposition and a memorandum of law. Petitioners have additionally submitted a reply memorandum of law in further support of their petition.{**3 Misc 3d at 210}

Conclusions of Law

1. New York Law

CPLR 7503 (b) provides that "a party who has not participated in the arbitration and who [*3]has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that . . . the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502." CPLR 7502 (b) provides: "If, at the time that a demand for arbitration was made . . . the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court."

2. Securities Law Violations; Statute of Limitations

"Litigation instituted pursuant to § 10 (b) and Rule 10b-5 . . . must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation[.]" (Lampf, Pleva, Lipkind, Prupis & Petigrow v Gilbertson, 501 US 350, 364 [1991].) However, since the Lampf decision, the appropriate statute of limitations period for section 10 (b) of the Securities Exhange Act of 1934 (15 USC § 78j [b]) and rule 10 (b-5) of the Securities and Exhange Commission (17 CFR 240.10b-5) claims has been changed by the Sarbanes-Oxley Act (Public Company Accounting Reform and Investor Protection Act of 2002, Pub L 107-204, 166 US Stat 745). (De la Fuente v DCI Telecom., Inc., 259 F Supp 2d 250, 254 [SD NY 2003] [Sarbanes-Oxley Act applies to proceedings commenced on or after July 30, 2002].)
28 USC § 1658 (b) now provides that
"a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in . . . 15 U.S.C. 78c (a) (47), may be brought not later than the earlier of
(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation." (28 USC § 1658 [b].)
Further, 15 USC § 78c (a) (47) defines "securities laws" as:
"[T]he Securities Act of 1933 (15 U.S.C. 77a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-Oxley Act of 2002, the Public Utility Holding Company Act of 1935 (15 U.S.C. 79a et {**3 Misc 3d at 211}seq.) . . ., the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), the Investment Advisers Act of 1940 (15 U.S.C. 80b et seq.) . . ., and the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.)." (15 USC § 78c [a] [47].)
Additionally, "the doctrine of equitable tolling does not apply to the statute of limitations in securities fraud cases." (De la Fuente v DCI Telecom., Inc., supra, 259 F Supp 2d 250, 263 [2003].) Finally, "in applying the Statute of Limitations [courts] look for the reality, and the essence of the action and not its mere name." (Brick v Cohn-Hall-Marx Co., 276 NY 259, 264 [1937]; Meyer v Shearson Lehman Bros., 211 AD2d 541 [1st Dept 1995]; see also von Bulow by Auersperg v von Bulow, 657 F Supp 1134, 1140 [SD NY 1987] ["(w)hen applying a statute of limitations, courts look at the essence of the stated claim and not the label by which plaintiff chooses to identify it" (internal quotation marks omitted)].) Petitioner argues that all of respondent's claims arise from petitioners' investment of her money, are governed by 28 USC § 1658 (b), and under CPLR 7502 (b), require the court to permanently stay the arbitration.

3. Mastrobuono and Howsam

The United States Supreme Court in Mastrobuono v Shearson Lehman Hutton, Inc. (514 [*4]US 52 [1995]) confronted a case in which an arbitrator had awarded punitive damages in contravention of New York law which prohibited arbitrators from doing so. In Mastrobuono, the arbitration agreement, a standard form client agreement, provided that it was to be governed by New York law, but that "any controversy arising out of or related to" the agreement was to be settled by arbitration according to the NASD rules "[u]nless unenforceable due to federal or state law." (Id. at 59 n 2 [internal quotation marks omitted].) The NASD permitted punitive damage awards by arbitrators. (Id. at 61.)
The Mastrobuono court noted that the Federal Arbitration Act (FAA) governed the dispute. (Id. at 57.) It further observed that the FAA's proarbitration policy required that private arbitration agreements be "enforced according to their terms," specifically stressing:
"Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which {**3 Misc 3d at 212}they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." (Id. at 57 [internal quotation marks and citations omitted]; see HSBC Bank USA v National Equity Corp., 279 AD2d 251, 254 [1st Dept 2001] [arbitration matter of consent and parties free to structure arbitration agreement as they see fit].)
In Mastrobuono, the Court found the contract ambiguous, but alluded to the FAA's policy of favoring arbitration and resolving any doubts as to the scope of arbitration in favor of such arbitration. (Id. at 62; see also Matter of PricewaterhouseCoopers L.L.P. v Rutlen, 284 AD2d 200 [1st Dept 2001] [FAA strongly favors arbitration and any ambiguity in scope of arbitration provision properly resolved in favor of arbitration]; Ryan, Beck & Co., LLC v Fakih, 268 F Supp 2d 210, 224 [ED NY 2003] [any doubts as to scope of arbitrable issues should be resolved in favor of arbitration].) It, then, utilized rules of contract interpretation in construing the ambiguous agreement. (Mastrobuono, supra at 62-63.) The Court interpreted the contract to require New York law to control substantive principles "but not to include special rules limiting the authority of arbitrators," thereby, permitting the punitive damage award to stand. (Id. at 64.)
Seven years later, the Supreme Court in Howsam v Dean Witter Reynolds, Inc. (537 US 79 [2002]) was asked to decide whether a court or an arbitrator was to determine the application of an NASD statute of limitations to a securities investment agreement. The client service agreement in that case provided that "all controversies . . . concerning or arising . . . shall be determined by arbitration." (Id. at 81 [internal quotation marks omitted].) The NASD code contained a six-year statute of limitation. (Id. at 82.) The investment advisor, Dean Witter, filed a suit in federal court to enjoin arbitration, arguing that the statute of limitations had run and that the application of the NASD limitation period presented a question of "arbitrability" reserved solely to the courts, not the arbitrators. (Id.)
The Supreme Court again recognized the liberal federal policy favoring arbitration, but noted that the "question of arbitrability" is one reserved to the judiciary. (Id. at 83; accord Green Tree Fin. Corp. v Bazzle, 539 US 444, , 123 S Ct 2402, 2407 [2003] [any doubt in regard to scope of arbitrable issues should be resolved in favor of arbitration].) The Court then defined arbitrability as a dispositive gateway questionthat is, where a question exists as whether a controversy is arbitrable; such a question {**3 Misc 3d at 213}goes to whether the parties agreed to arbitrate the controversy. (Howsam, supra at 83-84; accord Green Tree, supra ["gateway" issue devolves upon whether arbitration agreement is valid and whether arbitration clause covers certain type of controversy].) The Court held that procedural questions presumptively were not questions of [*5]arbitrability. (Howsam, supra at 84-85; accord Mulvaney Mech., Inc. v Sheet Metal Workers Intl. Assn., Local 38, 351 F3d 43 [2d Cir 2003] [disputes such as waiver, estoppel, laches and time limits are questions reserved for arbitrator]; Ryan, Beck & Co., LLC v Fakih, supra at 219 n 19 [limitation period is issue for arbitrator].) The Court, therefore, concluded the NASD time limitation was a matter to be decided by the arbitrator. (Howsam, supra.)

4. The Instant Claim

Interpretation of the instant arbitration agreement and its scope are clearly issues to be determined by the court. (See Howsam, supra at 83; accord Ryan, Beck & Co., LLC v Fakih, supra at 220.) Whether analyzed under Howsam or Mastrobuono, the court finds this application for a stay of arbitration should be denied.[FN2] 

(See PaineWebber Inc. v Bybyk, 81 F3d 1193 [2d Cir 1996] [where agreement provided for arbitration of any and all controversies and was to be "construed and governed" by New York law, statute of limitations was question for arbitrator].)[FN3]

Here, as in Mastrobuono and Howsam, the court is presented with a standard form client agreement. The agreement, as in Mastrobuono, states that it is to be governed by New York law, provides that "any dispute arising under the contract" is to be arbitrated and contains no express reference to limitation periods or punitive damages. Applying New York's rules for contract interpretation (see Mastrobuono, supra at 60 n 4 [interpretation of contract ordinarily question of state law]), the agreement's words are to be accorded their plain meaning and the contract must be read as to render none of its clauses meaningless. (Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 520 [1996]; HSBC Bank USA v National Equity Corp., {**3 Misc 3d at 214}supra, 279 AD2d 251, 253 [2001]; American Ex. Bank v Uniroyal, Inc., 164 AD2d 275, 277 [1st Dept 1990], lv denied 77 NY2d 807 [1991].) Moreover, if there is any doubt as to the meaning of the agreement, the doubt must be resolved against the drafter. (Graff v Billet, 64 NY2d 899, 902 [1985].)
The broad language of the instant agreement provides for arbitration of any and all disputes. Given Howsam's definition of arbitrability as excluding limitation periods and the rule of contract construction calling upon the court to interpret any ambiguity against petitionersthe drafters of this agreement, the court finds that the limitation issue here should be decided in arbitration. Similarly, the court finds Mastrobuono controlling on the issue of punitive damages.
Petitioners' reliance upon Matter of Smith Barney, Harris Upham & Co. v Luckie (85 NY2d 193 [1995]) does not militate in favor of a different result. As noted by the court in Bybyk (supra at 1200), the Luckie decision relied upon the Seventh Circuit's ruling in Mastrobuono, a decision later reversed by the Supreme Court. (See also Shaw Group Inc. v Triplefine Intl. Corp., 322 F3d 115, 123 [2d Cir 2003] [Luckie has been seriously undermined by Mastrobuono]; A.S. Goldmen & Co., Inc. v Bochner, 1996 WL 413676, 1996 US Dist LEXIS 10373 [SD NY, July 24, 1996] [Luckie dictates result contrary to Mastrobuono].) Additionally, Luckie predated both Howsam and Mastrobuono.
Nor does the Court of Appeals decision in Matter of Smith Barney Shearson v Sacharow (91 NY2d 39 [1997]) defeat arbitration here. Although Sacharow specifically relied upon Luckie, finding that questions of statutory time limits are to be determined by the courts, Sacharow preceded Howsam, which ruled the other way. (Id. at 48.)[FN4] 

Sacharow, on the other hand, did recognize "the long and strong public policy [of New York] favoring arbitration" and noted "that the parties' contractual choice of New York law should not trump the core arbitration provision." (Id. at 47.) Finally, the Sacharow court observed, "it would be ironic and anomalous to permit parties from the securities industry, who generally derive benefits from the arbitration method they impose on their thousands of consumers, to elude {**3 Misc 3d at 215}the comprehensive language of their own industry-drafted arbitration agreements." (Id. at 50.)[FN5] 

Accordingly, it is ordered that the petition is denied, the proceeding is dismissed and all stays are lifted.

Footnotes

Footnote 1: Petitioners dispute Musch's claim alleging that she "was an aggressive, speculative investor who wanted to invest (through Von Steen at least) in equities only[.]" (Verified petition 8.)

Footnote 2: The instant action involving interstate commerce is governed by the FAA. (See Utica Mut. Ins. Co. v Gulf Ins. Co., 306 AD2d 877, 878 [4th Dept 2003]; Matter of PricewaterhouseCoopers L.L.P. v Rutlen, supra, 284 AD2d 200 [2001]; Ryan Beck & Co., LLC v Fakih, supra, 268 F Supp 218 [1967].)

Footnote 3: Bybyk is a pre-Howsam case and, thus, considered the timeliness question to be an arbitrability issue. (Bybyk, id. at 1198.) It, therefore, stated the question was one for the court unless there was "clear and unmistakable" evidence to the contrary from a reading of the agreement. (Id. at 1198-1199.)

Footnote 4: In a like manner, Kidder, Peabody & Co. v Henehan (267 AD2d 120 [1st Dept 1999]), which held a New York choice of law provision in a customer agreement incorporated New York's rule that statute of limitation questions are for the court, predated Howsam and, therefore, does not control.

Footnote 5: Even were this court to rule that it, not the arbitrator, was to determine the timeliness of this claim and credit petitioners' limitation argument, the arbitration would still proceed. Respondent's claims accrued each time petitioners purchased equities for her. As a result, the limitation period began to run from each purchase. Since petitioners purchased equities for respondent through the end of 2002, some of her claims would still be alive even were the court to foreclose some of the earlier claims.