HTRF Ventures, LLC v Permasteelisa N. Am. Corp. (2021 NY Slip Op 00388)





HTRF Ventures, LLC v Permasteelisa N. Am. Corp.


2021 NY Slip Op 00388


Decided on January 26, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 26, 2021

Before: Webber, J.P., Mazzarelli, Oing, Shulman, JJ. 


Index No. 655970/16 Appeal No. 12026 Case No. 2019-5555 

[*1]HTRF Ventures, LLC, Plaintiff-Respondent,
v
Permasteelisa North America Corporation, Defendant-Appellant.


Wasserman Grubin & Rogers, LLP, New York (Michael T. Rogers of counsel), for appellant.
Wilmer Cutler Pickering Hale and Dorr, LLP, Washington, DC (Brent Gurney of the bar of the District of Columbia, admitted pro hac vice, of counsel), for respondent.



This appeal involves the Inter Active Corporation Building (IAC Building), located in Manhattan's Chelsea, which is the first building in New York City designed by the legendary architect Frank Gehry. It is the global headquarters of IAC/InterActive Corp (IAC), a leading media and internet company, and owner of Angie's List, Care.com, Handy, HomeAdvisor, Investopedia, Match.com, OkCupid, The Daily Beast, Tinder, Vimeo, and dozens of other top internet businesses. What sets the IAC Building apart from the City's other skyscrapers is its defining feature — a distinctive glass curtain wall faÇade.
Plaintiff, HTRF Ventures LLC (HTRF), owns the building. On October 6, 2005, HTRF, through its agent Georgetown 19th Street Development, LLC, entered into a construction management agreement (CMA), dated April 1, 2003, with nonparty Turner Construction Company (Turner) for the construction of the IAC Building. As is relevant to the issue herein, the CMA requires Turner to obtain from subcontractors and manufacturers "warranties which meet or exceed the requirements of the Contract Documents."
On November 30, 2004, Turner entered into a design build agreement (DBA) with defendant, Permasteelisa North America Corporation (Permasteelisa), to construct and install the glass curtain wall faÇade. In addition, the parties incorporated into the DBA the "Curtain Wall Performance Specification," (Specification), dated August 13, 2004, which sets forth the requirements relating to the construction of the curtain wall. The glass curtain wall system consists of double-glazed units (DGUs) made up of two or more windowpanes sealed with a polyisobutylene (PIB) sealant as a primary sealant. Nonparty Zadra Vetri, S.p.A. (Zadra) manufactured the DGUs. A structural weather-tight silicone, applied as the secondary sealant, was supplied by nonparty Dow Corning Company. The exterior work for the IAC Building reached substantial completion on November 22, 2006. In accordance with the Specification's warranty provision, Permasteelisa submitted its 5-year warranty for materials and labor workmanship on January 1, 2007. Permasteelisa also provided a 10-year warranty from Zadra, on January 20, 2008, and a 20-year warranty from Dow Corning, on February 5, 2008.
In October 2015, HTRF discovered drip marks within the DGUs. HTRF retained the firm Wiss, Janney, Elstner Associates, Inc. (WJE) to conduct surveys and an analysis of the PIB sealant. According to Daniel Lemieux of WJE, the PIB sealant lacked the necessary fillers, antioxidants, and UV stabilizers to protect it from sunlight and heat. As a consequence, WJE determined that the PIB sealant was defective. HTRF informed Permasteelisa of the issue of the migrating PIB on October 6, 2015. By letters, dated November 17, 2015 and January 15, 2016, HTRF again informed Permasteelisa of the PIB sealant defect and demanded that Permasteelisa honor its guarantees and warranties contained in the contract documents. Permasteelisa did not comply [*2]with the demand. HTRF commenced this action on November 15, 2016.[FN1]
Permasteelisa moved for summary judgment dismissing the complaint. It argued, inter alia, that the Specification only required it to submit for itself a 5-year warranty for materials and labor for the curtain wall system. For support, Permasteelisa sought to introduce extrinsic evidence to show that the parties intended Zadra, the manufacturer of the DGUs, to provide a 10-year warranty set forth in the Specification. That said, Permasteelisa argued that the accrual date for the breach of contract and warranty claims occurred on November 22, 2006, the substantial completion date, and that HTRF's commencement of this action on November 15, 2016, well beyond its 5-year warranty, was untimely.
Supreme Court rejected Permasteelisa's arguments, finding the relevant documents unambiguous, and thus eliminating the need to resort to extrinsic evidence. The court found that the language of the DBA established that not only did Permasteelisa agree to provide a 5-year warranty for its workmanship, but it also agreed to be bound by the 10-year warranty period for the PIB sealant. Thus, Supreme Court held that HTRF's action was not time-barred, and denied Permasteelisa's motion for summary judgment to dismiss the breach of contract and breach of express warranty claims.[FN2]
As to the threshold issue of whether HTRF is an intended third-party beneficiary of the DBA between Permasteelisa and Turner, we find that it is, and adopt the dissent's analysis on this issue. We turn to the more material issue on appeal  whether the Specification and Article XXI of the DBA obligate Permasteelisa to address the DGU panels' alleged PIB sealant failure based on the 10-year warranty period for that sealant. In deciding this issue, we agree with the dissent's view that the contractual provisions implicated in this appeal are unambiguous.
Permasteelisa continues to argue on appeal that it agreed only to issue a 5-year warranty, that Zadra's 10-year warranty and Dow Corning's 20-year warranty were merely "pass-thru warranties," and that Supreme Court erred in imposing on it Zadra's 10-year warranty. Specifically, Permasteelisa argues that the Specification required it to "submit" a 5-year warranty for its workmanship and to obtain warranties from others, and that, as is relevant here, it did "provide" a 10-year warranty for the PIB sealant from Zadra and a 20-year warranty for structural sealants from Dow Corning. Permasteelisa further argues that nothing in the Specification or the DBA identifies and imposes on it further or additional warranties other than those set forth in these agreements, pointing for support to the disclaimer set forth in its warranty. Thus, according to Permasteelisa, the DBA and Specification demonstrate that it agreed only to warranty its work in installing the DGUs on the curtain wall system for five years and that the suppliers of the different components that make up the DGUs [*3]would warranty the products they supplied. In addition, Permasteelisa contends that even if there were an ambiguity, the extrinsic evidence unequivocally confirms that the project participants intended Permasteelisa to submit only a 5-year warranty that was independent of the additional warranties provided by Zadra and Dow Corning. For the reasons that follow, we find these arguments unavailing.
Article XXI of the DBA, entitled "Guarantees," provides, in relevant part:
"The Subcontractor shall expeditiously remove, replace and/or repair at its own expense and at the convenience of the Owner any faulty, defective or improper Work, materials or equipment existing or discovered within one (1) year from the date of the acceptance of the Project . . . or for such longer period as may be provided in the Plans, Specifications including all Performance Criteria, General Conditions, Special Conditions or other Contract Documents. Subcontractor also agrees to deliver a 'Parent Company Guarantee' from the highest owner of the Permasteelisa Group, binding such owner to all terms of this agreement described herein." . . .
"Failure of Subcontractor to honor and satisfy the foregoing and any other warranties or guarantees required of the Subcontractor under the Contract Documents, shall constitute a default by the Subcontractor."
Section 1.11 of the Specification sets forth the three warranties:
"Submit a Five (5) year warranty covering materials and labor workmanship of the curtain wall system. Without restricting the generality of the warranty, definition of defects shall include failure of the installation to meet design requirements, leakage, failure of sealants and their ability of [sic] withstand the forces applied by the torqueing of the glass panels, failure of glass and laminated glass, delamination, haziness, paint fading, etc. Provide a Ten (10) year warranty on seal failure of the double glazed units. Provide a twenty (20) year warranty (such as Dow Corning VIP warranty) for structural glazing and silicone weather seals."
There is no dispute that the DBA specifically incorporates the Specification, so that they are essentially a single contractual document. In focusing on the DBA's and Specification's provisions addressing the contractually required warranties to support its arguments, Permasteelisa overlooks the equally clear and unambiguous language of the Article XXI "guarantees," which are separate from and independent of the Specification's warranty requirements. Indeed, Permasteelisa and the dissent read Permasteelisa's warranty obligations set forth in the Specification in a vacuum, contrary to the wording of the relevant agreements.
A contract should be read "as a harmonious and integrated whole" so as to "give effect to its purpose and intent," and "must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect" (Nomura Home Equity Loan, Inc., Series [*4]2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [internal quotation marks omitted]). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent or when specific language is susceptible of two reasonable interpretations" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014] [internal quotation marks and citations omitted]). Indeed, to that end, Article II of the DBA states that the contract documents "are intended to supplement and complement each other and shall, where possible, be thus interpreted." As noted above, given that the relevant provisions of the DBA and Specification are not ambiguous, resort to extrinsic evidence is precluded (see South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 278 [2005]).
In an attempt to resolve this contractual dispute, the dissent lays out the tenets of contract interpretation, including that a contract's various sections should be read together so as to give each section its intended meaning and purpose. It thenfocuses its analysis solely on the warranty provision in the Specification without any attempt to reconcile that provision with Article XXI. In giving that provision short shrift, the dissent's analysis does not align with these well-settled tenets.
The Specification obligates Permasteelisa to "submit" a 5-year warranty. However, Permasteelisa also unmistakably agreed in Article XXI to both a guarantee and a warranty, separate and apart from each other. With the warranty obligation, Permasteelisa agreed to warrant that the materials were of "first class quality" and that the work would "strictly conform" to the contract requirements. Pursuant to its guarantee obligation, Permasteelisa agreed to guarantee, separate and apart from its noted warranty obligation, that it would "remove, replace and/or repair at its own expense and at the convenience of [HTRF] any faulty, defective or improper . . . materials . . . existing or discovered within one (1) year from the date of the acceptance of the Project . . . or for such longer period as may be provided in the Plans, Specifications . . . or other Contract Documents."
Although we concur with the dissent's rejection of HTRF's assertion that the guarantees and warranties "have no time limit," the question that remains is how to measure Article XXI's "longer period." The dissent notes that under its 5-year warranty Permasteelisa would provide broad coverage for "failure of sealants" and that the 10-year warranty provided narrower coverage for "seal failure of the double lazed units." In rejecting HTRF's interpretation that would impose the 10-year warranty upon Permasteelisa, the dissent explains that do so would mean that Permasteelisa agreed to warrant the PIB sealant under two different time periods in the same paragraph. The dissent then concludes that "[i]t is thus far more reasonable that the 10-year warranty [Permasteelisa] was to 'provide' was ultimately [*5]the obligation of someone other than [Permasteelisa]." Respectfully, although its conclusion may be "reasonable" and provides a plausible explanation as to why the 10-year warranty should not be imposed on Permasteelisa, by limiting its analysis to the Specification to the exclusion of Article XXI, the dissent does not consider the effect its interpretation has on determining the "longer period" question under the guarantees set forth in Article XXI.
Permasteelisa's obligations under Article XXI of the DBA are clear. They are separate and apart from its 5-year warranty in the Specification. Thus, even if the 10-year warranty is a manufacturer's warranty, essentially ensuring that Zadra would warrant the DGUs' seal failure, the dissent fails to explain why the warranty's 10-year time period should not be deemed part of the "longer period," requiring Permasteelisa to "remove, replace, and/or repair . . . [the] defective . . . materials," as it guaranteed under the DBA. In order to give meaning to the fully integrated documents, the "longer period" unambiguously includes the 10-year period under the DGUs' sealant warranty set forth in the Specification. If HTRF can ultimately prove that the DGUs' sealant failed, then Permasteelisa would be obligated to comply with the guarantees set forth in Article XXI. Finally, Permasteelisa cannot rely on the disclaimer set forth in its warranty to avoid its guarantee. That disclaimer is limited to "express or implied" warranties, and does not include "guarantees." Regardless, if this disclaimer were enforced to preclude the application of the 10-year warranty period, the preclusion would render meaningless the obligations Permasteelisa agreed to under the Article XXI guarantee (see Nomura, 30 NY3d at 581; Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984]).
Based on the foregoing, we hold that the 10-year warranty period is applicable, and affirm Supreme Court's finding that HTRF's breach of contract and breach of warranty claims are not time-barred.
Accordingly, the order of the Supreme Court, New York County (Joel M. Cohen, J.), entered July 8, 2019, which to the extent appealed from, denied defendant's motion for summary judgment dismissing the causes of action for breach of contract and breach of express warranty should be affirmed, with costs.
All concur except Mazzarelli, J. who dissents in a memorandum as follows:
MAZZARELLI, J., dissenting,
The issue in this case is whether defendant, Permasteelisa North America Corporation, a sub-contractor hired by non party construction manager Turner Construction Company (Turner), is, pursuant to guarantees and warranties in its agreement with Turner, required to indemnify plaintiff, the owner of the building at issue, for damages stemming from defects in the curtain wall defendant was hired to construct. The building was designed by Frank Gehry, an architect of worldwide renown, and the distinctive curtain wall was the highlight [*6]of the design. The curtain wall was to be made of a series of insulated glass units, also referred to as double-glazed units, each consisting of two window panes sealed with a polyisobutylene sealant.
Defendant entered into a design build agreement (DBA) with Turner that required it to warrant its work, but the parties disagree on the length of the warranty period during which defendant is responsible for necessary repairs. The DBA contained an Article XXI, entitled "Guarantees," which provided:
"The Subcontractor hereby guarantees the Work to the full extentprovided in the Plans, Performance Criteria, Specifications, General Conditions, Special Conditions and other Contract Documents.
"The Subcontractor shall expeditiously remove, replace and/or repair at its own expense and at the convenience of the Owner any faulty, defective or improper Work, materials or equipment existing or discovered within one (1) year from the date of the acceptance of the Project . . . or for such longer period as may be provided in the Plans, Specifications including all Performance Criteria, General Conditions, Special Conditions or other Contract Documents. . . .
"Without limiting the generality of the foregoing, the Subcontractor warrants to the Owner, the Architect and Turner, and each of them, that all materials and equipment furnished under this Agreement will be of first class quality and new . . ., that the Work performed pursuant to this Agreement will be free from defects and that the Work will strictly conform with the requirements of the Contract Documents. Work not conforming to such requirements, including substitutions not properly approved and authorized, shall be considered defective. All warranties contained in this Agreement shall be as specified in the Contract Documents. Failure of Subcontractor to honor and satisfy the foregoing and any other warranties or guarantees required of the Subcontractor under the Contract Documents, shall constitute a default by the Subcontractor."
Thus, defendant warranted its work for one year after Turner accepted it, unless it had agreed in one of the various documents laying out the parties' rights and responsibilities to a longer warranty period. One of those documents was the "Curtain Wall Performance Specification," which required defendant to:
"submit a Five (5) year warranty covering materials and labor workmanship of the curtain wall system. Without restricting the generality of the warranty, definition of defects shall include failure of the installation to meet design requirements, leakage, failure of sealants and their ability of [sic] withstand the forces applied by the torqueing of the glass panels, failure of glass and laminated glass, delamination, haziness, paint fading, etc. Provide a Ten (10) year warranty on seal failure of the double glazed units. Provide a twenty (20) year warranty (such as Dow Corning VIP warranty) for structural glazing and silicone weather seals."
The exterior work [*7]reached substantial completion on November 22, 2006. On January 1, 2007, defendant provided a 5-year warranty on materials and workmanship. Defendant also provided Turner with a 10-year warranty from Zadra Vetri, S.p.A (Zadra), the manufacturer of the double-glazed units.[FN3] In October 2015, plaintiff noticed that the double-glazed units making up the curtain wall were streaked with moisture, resulting in marks that blocked vision through the glass. This allegedly occurred because the material defendant used to seal the glass units lacked critical ingredients and failed, allowing vapor to invade the internal air space of the units. Plaintiff demanded that defendant replace the defective glass units, claiming that it was a third-party beneficiary of the DBA. It claimed that its standing to sue derived from the construction management agreement (CMA) between plaintiff and Turner, which provided:
"Construction Manager shall, without additional cost to Owner, obtain from Trade Contractors and Sub-trade Contractors (including, but not limited to, manufacturers) warranties which meet or exceed the requirements of the Contract Documents. All such warranties shall be deemed to run to the benefit of Owner. Such warranties, with duly executed instruments assigning the warranties to Owner, shall be delivered to Ownerupon the commencement of the applicable warranty period, as defined in Section 13.1.
"All warranties provided by any Trade Contractor or Sub trade Contractor (including, but not limited to, manufacturers) shall be in such form as to permit direct enforcement by Owner against any Trade Contractor or Sub-trade Contractor (including, but not limited to, manufacturers) whose warranty is called for."
Plaintiff also relied on the fact that Article XXI of the DBA expressly stated that the warranty given by defendant extended to "the Owner."
Defendant refused to accede to plaintiff's demand, since the 5-year guarantee it had provided pursuant to the Curtain Wall Performance Specification had expired long before plaintiff invoked the warranty. Defendant took the further position that it had no liability under the 10-year Zarda warranty that covered "seal failure of the double glazed units," asserting that plaintiff could only enforce that warranty directly against Zarda. Plaintiff commenced this action, asserting causes of action including breach of contract and breach of express warranty. Defendant moved for summary judgment, arguing, inter alia, that plaintiff was not an intended third-party beneficiary of the DBA, that the contract documents did not require it to personally warrant any of its work for more than five years, a period that had expired long before the action was commenced, and that plaintiff was also time-barred from arguing that defendant should have provided any further warranties. Plaintiff cross-moved for summary judgment on the issue of liability on its breach of contract and express warranty claims.
The court sustained the [*8]claims for breach of contract and of an express warranty. It found plaintiff to be an intended third-party beneficiary of the DBA and concluded that the "plain and unambiguous language" of that agreement required defendant to provide express warranties in addition to the five-year warranty. It noted that defendant had "agreed to remove, replace and/or repair 'at its own expense' any defective Work, including materials such as PIB [polyisobutylene] sealant, that existed or was discovered within one year from the project's acceptance or longer period provided by the specifications, including the 5-year period for workmanship and 10-year period for seal failure." The court further concluded that plaintiff's claims were not barred by the 6-year statute of limitations. It acknowledged that a cause of action for breach of a construction contract accrues upon substantial completion of the work, but also noted that "'where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute [of limitations] anew.'" On that basis, the court rejected the statute of limitations defense, finding that defendant had a continuing obligation to repair the work, thus extending the statute of limitations.
As a preliminary matter, I agree with plaintiff that the breach of contract and breach of express warranty claims should not have been dismissed on the basis that plaintiff was not an intended third-party beneficiary of the DBA. In the context of a construction contract, so long as there is "express contractual language stating that the contracting parties intended to benefit a third party by permitting that third party to enforce" the contract, the third party may enforce its rights (Dormitory Auth. of the State of N.Y. v Samson Constr. Co.,30 NY3d 704, 710 [2018] [internal quotation marks omitted]). The DBA contains clear language evincing an intent to permit enforcement by plaintiff. In Article XXI of the DBA, defendant "warrants to the Owner . . .that the Work performed pursuant to this Agreement will be free from defects." Also, under Article II, defendant agreed to be bound by the CMA, and the CMA required Turner to "obtain from Trade Contractors and Sub-trade Contractors . . . warranties" and provided that "[a]ll such warranties shall be deemed to run to the benefit of the Owner" and "shall be in such form as to permit direct enforcement by Owner against any Trade Contractor or Sub-trade Contractor." Defendant's contentions that the CMA was not properly incorporated into the DBA and that, under New York law, the DBA's incorporation clause cannot bind it to CMA provisions outside of those related to "scope, quality, character and manner of . . . work to be performed," are raised for the first time in its reply brief, and, as such, are unpreserved for review (see Shackman v 400 E. 85th St. Realty Corp., 161 AD3d 438, 439 [1st Dept 2018]).
Turning to the question whether the defendant had any obligations [*9]beyond the five-year warranty provision embodied in the Curtain Wall Performance Specification, it is axiomatic that the goal in reviewing any contract is to interpret it in such as a way as to reflect the parties' true intent (see Greenfield v Phillies Records, 98 NY2d 562, 569 [2002]). To that end, "words should be accorded their fair and reasonable meaning, and the aim is a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations" (Dreisinger v Teglasi, 130 AD3d 524, 527 [1st Dept 2015] [internal quotation marks omitted]). Separate clauses of a contract should be read together, with the contract's greater context taken into consideration, in order to give them meaning (see HSBC Bank USA v National Equity Corp., 279 AD2d 251, 253 [1st Dept 2001]). I agree with the majority that the contractual provisions at issue here are not ambiguous. However, its and plaintiff's interpretation of those provisions do not, in my view, heed these principles. First, plaintiff takes the position that, notwithstanding the fixed warranty periods in the DBA, defendant agreed to be bound by warranties and guarantees that "have no time limit." It is true that Article XXI of the DBA contains a broad guarantee of the work, since defendant agreed therein to remove, replace and/or repair any defective work within one year from the date of the acceptance of the Project, "or for such longer period as may be provided" in the contract documents. However, nothing in the agreements "provides" for a perpetual obligation. Indeed, Article XXI clearly states that "[a]ll warranties contained in this Agreement shall be as specified in the Contract Documents." Since no open-ended warranty that would last for the life of the building is specified in any of the contract documents, including the DBA itself, plaintiff's extraordinary position that the warranty is interminable is unavailing, a conclusion with which the dissent agrees. "A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (Matter of Lipper Holdings v Trident Holdings, 1 AD3d 170, 171 [1st Dept 2003] [internal citations omitted]).
The same canons of contract interpretation apply to the provision in the Specification that contains the specific warranties. The 5-year warranty that defendant was required to, and did, provide, was broad and covered all the materials and labor making up the curtain wall, including, notably, "failure of sealants" in the curtain wall. The 10-year warranty is much narrower than its 5-year counterpart, covering only "seal failure of the double-glazed units." If, as plaintiff argues, this made defendant the warrantor of the sealant used in the double-glazed units, then one questions why it would have been necessary for the 5-year warranty to specifically mention "failure of sealants." In construing contracts, courts are [*10]not to interpret any clause as being superfluous (see By Design LLC v Samsung Fire & Mar. Ins. Co. Ltd. [U.S. Branch], 173 AD3d 590, 592 [1st Dept 2019]). However, plaintiff urges upon this Court a construction that twice in one paragraph has defendant warrant the seal materials used in the curtain wall, but for different periods of time. It is thus far more reasonable that the 10-year warranty that defendant was to "provide" was ultimately the obligation of someone other than defendant. It is further noted that the provision for a 20-year warranty on "structural glazing and silicone weather seals," although not at issue here, specifies that it is a manufacturer's warranty, since it provides the example of "a Dow Corning VIP warranty." Although the 10-year warranty provision does not contain a similar limiting example, the language used in the 20-year warranty lends force to defendant's argument that not all of the warranties mentioned in the Curtain Wall Performance Specification imposed a direct liability on defendant, other than merely to secure and pass along the warranty of a third party.
The majority concludes that the 10-year warranty provision was a direct obligation of defendant's on the basis that, pursuant to its reading of Article XXI of the DBA, defendant was to provide a warranty for any length of time greater than one year so long as that period of time was specified in any of the contract documents. The majority's interpretation is correct, but only to a point. For example, the first warranty contained in the Curtain Wall Performance Specification lasted for more than one year, since, as even defendant admits, in that document it expressly agreed to directly warrant its work for five years. However, the majority interprets Article XXI too broadly when it argues that the Specification obligated defendant to provide a warranty for at least 10 years, since that approach divorces the various lengths of years in the Specification from the actual promises that the document reflects. Indeed, the majority concedes that it is "plausible" to argue that the 10-year warranty in the Specification does not create any obligation on defendant's part other than to hand in a warranty it secured from the manufacturer. However, it nevertheless adheres to the position that only the number of years matters. This approach requires one to look at the warranty periods in the Specification in a vacuum, and to set aside the maxim that contractual clauses need to be considered in context (see HSBC Bank USA, 279 AD2d at 253). Moreover, in my view, there is simply no reasonable interpretation of Article XXI that requires that the various contract documents providing "for such longer period[s]" of time are to be considered only with respect to the lengths of years stated therein, and without respect to any limiting language that might restrict the extent of defendant's obligation.
Again, in construing the Specification, I conclude that it can only be reasonably [*11]read to impose on defendant the obligation to personally warrant its labor and material for a period of five years. Plaintiff never made a claim regarding defendant's workmanship or the materials it used within the five-year period following substantial completion of the project. For that reason, in my view, plaintiff has no cause of action, and the action should have been dismissed in its entirety.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 26, 2021



Footnotes

Footnote 1: Notably, Permasteelisa commenced two third-party actions against various entities that were involved in manufacturing and supplying the PIB sealant. Supreme Court (Bransten, J.) severed those actions from this action, and they are still pending.

Footnote 2: Supreme Court granted the motion to the extent of dismissing HTRF's causes of action for breach of express and implied warranty under the UCC, negligence, and strict liability, and denied that branch of HTRF's motion for summary judgment on its breach of contract and breach of warranty claims. These rulings are not at issue in this appeal.

Footnote 3: Defendant also tendered a 20-year warranty on the silicone sealant from Dow Corning, the manufacturer of such sealant; however, that product is not at issue.