Ellenberg Morgan Corporation, Appellant, v Hard Rock Cafe Associates, Respondent.

First Department, April 22, 1986

## APPEARANCES OF COUNSEL

*Stacy L. Wallach* of counsel *(Ronald L. Mayers* with him on the brief; *Tenzer, Greenblatt, Fallon & Kaplan,* attorneys), for appellant.

*John P. Casaly* of counsel *(Andral N. Bratton* with him on the brief; *Jones, Hirsch, Connors & Bull,* attorneys), for respondent.

## OPINION OF THE COURT

KASSAL, J.

The action was commenced in January 1985, for a judgment declaring that plaintiff was a 10% limited partner of defendant Hard Rock Cafe Associates, which owns and operates a Manhattan restaurant, known as the Hard Rock Cafe.

Plaintiff had been retained to act as construction manager in the alteration of the restaurant, for which it was to receive a fee of $100,000, payable when the restaurant opened in March 1984. Plaintiff had previously earned a brokerage commission of $37,500 for services in procuring the property. In October 1983, at the request of Isaac Tigrett, defendant's general partner and principal, plaintiff had advanced $87,500 to the partnership, at a time when defendant was experiencing cash flow difficulties. The loan was evidenced by a demand promissory note.

Prior to the opening, in lieu of payment of the foregoing sums, plaintiff requested that it be permitted to acquire a 10% limited partnership interest. This resulted from negotiations between plaintiff's president, Shepard Ellenberg, and Tigrett. Accordingly, in March 1984, Tigrett directed his counsel to prepare a special subscription agreement negotiated between the attorneys, providing for the issuance to plaintiff of a 10% interest in the partnership in return for the previous $87,500 cash payment, the assignments of the brokerage commission

($37,500) and the construction management fee ($100,000), making a total of $225,000. This sum corresponded to the amount paid by other subscribers for a 10% limited partnership interest, albeit defendant's limited partnership agreement required payment to be made in three installments on specified dates. The agreement authorized the general partner to admit other limited partners, provided the standard subscription agreement was used, and, if not, the approval of 51% of the limited partners was required (§ 7.03). Section 4.03 of the agreement further provided that the agreement must be signed by the subscriber, accepted by the general partner and returned to the subscriber before it would be effective.

On March 12, 1984, after the restaurant had opened, plaintiff requested documents confirming its subscription to and participation in the limited partnership. Accordingly, on March 21, 1984, defendant's attorney, William Sterns, forwarded to plaintiff a copy of the limited partnership agreement and plaintiff's subscription acknowledging that the contractor's fee of $100,000 had been fully earned as of that date. The letter instructed Shepard Morgan, one of plaintiff's officers, to sign and date the partnership and subscription agreements, the assignments, release and power of attorney and return the same to him with a completed qualification questionnaire. Under the subscription agreement, the $87,500 promissory note was to be returned to defendant and plaintiff's brokerage commission ($37,500) and construction management fee ($100,000) were to be assigned in full payment of its capital contribution as a limited partner.

On March 30, 1984, Sterns forwarded a proposed form of subscription agreement and again advised that defendant was "willing to agree that your fee of $100,000.00 has been earned as of this date". Thereafter, on April 3, 1984, plaintiff executed and returned to defendant the subscription agreement and assignments, together with the promissory note. However, Tigrett did not return the executed subscription agreement to plaintiff, an express condition to its effectiveness.

Plaintiff, in any event, relies upon certain events which, it claims, evince a binding intention by Tigrett, as general partner, to accept plaintiff as a 10% limited partner. As a result of an unexplained incident between Tigrett and Ellenberg on the weekend prior to the opening, Tigrett insisted on buying back plaintiff's interest. In a telex dated October 12, 1984, he inquired whether plaintiff would be interested "in disposing of your shares and if so at what price?" Subse-

quently, at a meeting on October 18, 1984, defendant's attorney, Daniel Hirsch, reportedly stated that Tigrett had directed that he no longer wished plaintiff to be a limited partner, wanted to buy back its interest at the original price ($225,000) and, if plaintiff would not agree, it would be necessary for plaintiff to commence "a long and expensive lawsuit" to gain recognition as a limited partner.

In moving for summary judgment dismissing the complaint, defendant claimed that plaintiff's subscription agreement varied in material respects from the standard form in that this transfer was not on a cash basis, in contrast to the all-cash installment payments required by the standard agreement. As a result of this deviation, it is argued that plaintiff's subscription was barred by the limited partnership agreement, which required the consent of or ratification by 51% of the limited partners. Alternatively, defendant contended that the full subscription price had not been paid since there had been malfeasance by plaintiff as construction manager. While defendant does not deny having previously admitted that the fee had been fully earned, it is alleged that this was before Tigrett learned of the extent of plaintiff's malfeasance. Following oral argument at Special Term, at which defendant submitted the affidavits of limited partners representing more than a 95% interest in the partnership, all of whom objected to plaintiff's subscription, the court dismissed the complaint, declaring that the plaintiff was not entitled to any limited partnership interest. In doing so, it concluded that there was a substantial difference between plaintiff's subscription agreement and the standard form and, therefore, found dispositive the affidavits of the limited partners that they would not consent to plaintiff's subscription.

Bearing in mind the limited function of the court on a motion for summary judgment, we conclude that the several factual issues present here should await disposition at trial, especially since summary judgment is a drastic remedy, which should only be granted where there is no doubt as to the existence of a triable issue of fact *(Moskowitz v Garlock,* 23 AD2d 943, 944) or where the issue is even arguable *(Barrett v Jacobs,* 255 NY 520, 522).

In concluding that there was a material variance between plaintiff's subscription agreement and the standard form, Special Term overlooked evidence in the record of an unequivocal acknowledgement by defendant of its indebtedness to plaintiff in the sum of $225,000 which would render plaintiff's

subscription to be on an all-cash basis. The only difference between the standard form and this transaction would be that the plaintiff had prepaid the entire subscription price, in place of the deferred installments in the standard agreement. Concededly, plaintiff had previously advanced $87,500 cash to the restaurant and admittedly had earned a brokerage fee of $37,500. In spite of this, it is now asserted that the construction fee of $100,000 had not been earned because of certain misconduct, which is one of the factual issues which cannot be resolved on this record and should await the trial. In the event it is established that the fee was earned at the time the subscription agreement was signed, it could be concluded that there was then due and owing to plaintiff the full amount of the subscription, which, as an acknowledged indebtedness, could be offset or credited against the purchase price. *(Cf. Matter of San Giacomo,* 14 NY2d 615; *Matter of Klaum,* 58 Misc 2d 262.)*

To the extent there is a variance between plaintiff's agreement and the standard subscription contract, there may be a further factual issue as to whether approval or ratification by 51% of the limited partners was required in this instance. The agreement does so provide and limits the authority of the general partner where the standard form is not employed. Nevertheless, it is asserted that the parties did not intend consent or ratification to be an absolute and necessary requisite. This is evidenced, in part, by the fact that Tigrett had previously conveyed an interest in this partnership to his attorney on terms markedly different from the limited partnership agreement and without submission to the limited partners for approval. Clearly, the intention of the parties as to such requirement cannot be resolved on the conflicting affidavits in the record. While it is undisputed that the consent of the limited partners had not been secured, Tigrett had acknowledged the vesting of plaintiff's interest as a limited partner, in that he had offered to repurchase its 10% partnership interest on at least two separate occasions, in a telex and at a meeting with defendant's attorney.

Although the defendant relies upon the absence of the necessary consents or ratification by the limited partners, it is alleged that this issue was not raised until the motion for summary judgment. Moreover, and this is significant, although Tigrett has insisted upon the necessity of the consent of 51% of the limited partners for the validity of plaintiff's subscription agreement, it was Tigrett who thereafter actively

solicited the affidavits of more than 95% of the same limited partners, disapproving the 10% subscription by plaintiff.

It is a fundamental principle of equity that a party may not insist upon performance of a condition precedent when its nonperformance has been caused by the party himself *(Wagner v Derecktor,* 306 NY 386, 391; *Stern v Gepo Realty Corp.,* 289 NY 274, 276; *Amies v Wesnofske,* 255 NY 156, 162-163; *Collins Tuttle & Co. v Ausnit,* 95 AD2d 668, 669, *mot to dismiss appeal granted* 60 NY2d 644; *Fifty States Mgt. Corp. v Niagara Permanent Sav. & Loan Assn.,* 58 AD2d 177, 181; 5 Williston, Contracts §§ 677, 677A [3d ed]). This concept is firmly established in this State. Over 134 years ago, in *Young v Hunter* (6 NY 203, 207 [1852]), the Court of Appeals referred to the "well-settled and salutary rule, that a party cannot insist upon a condition precedent, when its nonperformance has been caused by himself." The principle is aptly stated in 3A Corbin, Contracts § 767, at 540: "One who unjustly prevents the performance or the happening of a condition of its own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised."

Defendant and Tigrett, as its general partner, are both charged with a breach of an implied covenant of fair dealing and good faith, an obligation implicit in all contracts *(see, Brassil v Maryland Cas. Co.,* 210 NY 235, 242; *Underhill v Schenck,* 238 NY 7; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79; *Goodstein Constr. Corp. v City of New York,* 111 AD2d 49). It is implicit in this obligation that no party will do anything to destroy or injure the right of another party under the contract *(Kirke La Shelle Co. v Armstrong Co., supra; Lowy & Donnath v City of New York,* 98 AD2d 42, 45, *affd* 62 NY2d 746). In *Kooleraire Serv. & Installation Corp. v Board of Educ.* (28 NY2d 101, 106), the court cited the general rule that "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurence of the condition."

Applying these precepts here, if Tigrett acted in bad faith by actively soliciting from the limited partners their rejection of plaintiff's subscription, defendant cannot rely upon plaintiff's failure to satisfy the condition precedent. These several factual issues, including Tigrett's authority as defendant's

general partner, actual, implied or apparent, cannot be resolved on this record and must await disposition at trial.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Ira Gammerman, J.), entered September 5, 1985, which, *inter alia,* granted defendant's motion for summary judgment, dismissing the complaint and declaring that plaintiff was not a limited partner or entitled to any interest in defendant, should be reversed, on the law, with costs, the motion denied, the declaratory judgment vacated and the complaint reinstated.

SANDLER, J. P., CARRO, ASCH and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on September 5, 1985, unanimously reversed, on the law, the motion for summary judgment denied, the declaratory judgment vacated and the complaint reinstated. Appellant shall recover of respondent $75 costs and disbursements of this appeal.