[596 NYS2d 808]

LONG ISLAND SAVINGS BANK, FSB, Appellant, v GELODA/
BRIARWOOD CORP., Respondent.

First Department, April 29, 1993

### APPEARANCES OF COUNSEL

*Robert M. Calica* of counsel, Garden City *(E. Christopher Murray* with him on the brief; *Reisman, Peirez, Reisman & Calica,* attorneys), for appellant.

*Luigi P. DeMaio* of counsel, New York City *(DeMaio & Hughes,* attorneys), for respondent.

### OPINION OF THE COURT

WALLACH, J.

At issue on this appeal is the dismissal, on summary judgment, of the entitlement of plaintiff Long Island Savings Bank (Bank) to "additional compensation" (estimated at $1 million) consisting of 25% of the "net profits" of a condominium project sponsored by defendant Geloda/Briarwood Corp. (Sponsor), as part of the consideration for an $18 million construction loan to the Sponsor made by the Bank's predecessor, Flushing Federal Savings & Loan, in 1983. Contrary to the motion court, we conclude that the claim cannot be rejected as a matter of law.

The project, located in Manhattan's Upper West Side, consisted of 108 residential units and a garage. The mortgage provided that "[w]ithin 90 days after sale of all residential units and garage space is completed, Borrower shall account to Lender with a certified financial statement" and that the additional compensation shall be "immediately" payable.

In 1985 the Sponsor leased the entire garage for a 10-year term. On April 29, 1986, following the insolvency of Flushing Federal, plaintiff Bank acquired its assets including the subject loan. Seven months later, on November 24, the Bank made a further $2.5 million loan to the Sponsor secured by individual mortgages on 11 of the project's 19 unsold units, and simultaneously delivered a satisfaction of the earlier $18 million mortgage, whose principal and interest had been entirely paid. Part of the relief sought by the Bank is rescis-

sion and cancellation of this satisfaction instrument on the ground of mistake, pursuant to Real Property Law § 329.

The motion court construed the mortgage reference to sale of "all" units as an absolute condition precedent to any Sponsor liability for additional compensation. In doing so the court overlooked the possibility, if not the likelihood, that complete sale of the units, as such, was not intended as a condition precedent, but rather as merely identification of an event to fix the time when the compensation would become due. This is a familiar feature of construction contracts to which this financing arrangement is closely related *(Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co.,* 40 NY2d 883; *Mass Transp. Elec. Constr. Corp. v Penta Constr. Corp./Eugene Goldman, Inc.,* 140 AD2d 174).

Furthermore, the fact that changes in real estate market conditions resulted in rental, rather than sale, of a relatively small portion of the project is not an insuperable barrier to the Bank's recovery, once it is appreciated that the mutual goal of the financing was successful economic development of the property in order to generate "net profits" for the benefit of both parties, and that the particular format by which the profits were to be realized would be a clearly subordinate consideration. *Sutton v East Riv. Sav. Bank* (55 NY2d 550) is instructive in this regard, where the Court held that a broker's commission claim was not to be defeated by a change in mesnes conveyances leading to the transfer of title contemplated and ultimately effected. As the Court of Appeals there observed *(supra,* at 555), "[I]n searching for the probable intent of the parties, lest form swallow substance, our goal must be to accord the words of the contract their 'fair and reasonable meaning' * * * Put another way, 'the aim is a practical interpretation of the expressions of the parties to the end that there be a "realization of [their] reasonable expectations" ' * * * Concordantly, as previously indicated, not merely literal language, but whatever may be reasonably implied therefrom must be taken into account * * * As we recently declared, unless there are reservations to the contrary, embraced in the interpretative result should be ' "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" ' ".

Emboldened, perhaps, by its unsought victory at the IAS Court, the Sponsor takes the rather high line with us that under the terms of the mortgage its withholding of a single

unit (even "arbitrarily") from sale would be sufficient to extinguish the Bank's entitlement. However, the reach of equity is not so short. As this Court has previously noted, " 'One who unjustly prevents the performance or the happening of a condition of its own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.' " *(Ellenberg Morgan Corp. v Hard Rock Cafe Assocs.,* 116 AD2d 266, 271, quoting 3A Corbin, Contracts § 767.)

The satisfaction of the mortgage, if mistakenly issued by the Bank in 1986 without any additional consideration, is not an insuperable barrier to recovery *(Manufacturers Hanover Trust Co. v Chemical Bank,* 160 AD2d 113, *lv denied* 77 NY2d 803; *Prudential Ins. Co. v S.S. Am. Lancer,* 870 F2d 867). Nor are the self-serving and hearsay accounts of the alleged conversations between the Sponsor's president and the officers of the Flushing Bank, to which plaintiff Bank was not privy, conclusive on the issue, particularly in light of the president's admissions, in the course of his deposition, that he undertook to submit the accounting of profits to the Bank before repudiating the obligation.

In any event, there are important policy considerations, amounting to an estoppel, that should preclude the attribution of significant weight to such parol testimony tending to vary the force of contradictory loan documentation, particularly in the context of acquisition by one financial institution of the assets of another insolvent entity arranged by a Federal regulatory agency *(see, Federal Deposit Ins. Corp. v Central Wine & Liq.,* 187 AD2d 314).

Accordingly, the order of Supreme Court, New York County (Peter Tom, J.), entered on or about October 16, 1992, which denied plaintiff's motion for summary judgment, granted defendant's cross motion to vacate a notice of pendency, and *sua sponte* granted defendant summary judgment dismissing the complaint, should be modified, on the law, to the extent of denying summary judgment, reinstating the complaint and the notice of pendency, and remanding the matter for trial, without costs.

SULLIVAN, J. P., ELLERIN, ROSS and RUBIN, JJ., concur.

Order of Supreme Court, New York County, entered on or about October 16, 1992, which denied plaintiff's motion for

summary judgment, granted defendant's cross motion to vacate a notice of pendency, and *sua sponte* granted defendant summary judgment dismissing the complaint, is modified, on the law, to the extent of denying summary judgment, reinstating the complaint and the notice of pendency, and remanding the matter for trial, without costs.