[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2012
JOHN LEY
CLERK

No. 11-13227

_____

D.C. Docket No. 1:10-cv-00844-TCB

AKANTHOS CAPITAL MANAGEMENT, LLC,
ARIA OPPORTUNITY FUND LTD.,
CNH CA MASTER ACCOUNT, L.P.,
GLG INVESTMENTS PLC: SUB-FUND GLG
GLOBAL CONVERTIBLE UCITS FUND,
GLG INVESTMENTS IV PLC: SUB-FUND GLG
GLOBAL CONVERTIBLE UCITS (DISTRIBUTING) FUND, et al.,

Plaintiffs - Appellees,

CC ARBITRAGE, LTD, et al.,

Plaintiffs,

versus

COMPUCREDIT HOLDINGS CORPORATION,
DAVID G. HANNA,
FRANK J. HANNA, III,
RICHARD R. HOUSE, JR.,
RICHARD W. GILBERT,
K. K. SRINIVASAN,
J. PAUL WHITEHEAD, III,

THOMAS G. ROSENCRANTS,
GREGORY J. CORONA,

Defendants - Appellants.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
————————————————

(April 25, 2012)

Before WILSON and MARTIN, Circuit Judges, and ALBRITTON,[*] District Judge.

WILSON, Circuit Judge:

This case concerns the applicability of a standard "no-action clause" in a

trust indenture governing a company's notes. The clause at issue states that a

noteholder cannot "pursue any remedy with respect to this Indenture or the

Securities" unless the noteholder falls within one of two exceptions. This appeal

asks whether noteholders who do not fall within a stated exception to the clause

may nonetheless bring fraudulent transfer claims against the issuer of the securities

and its directors and officers. Although the district court found the no-action

clause inapplicable to the claims, we disagree and hold that the language of the no-

———————————————

    [*] Honorable W. Harold Albritton, United States District Judge for the Middle District of
Alabama, sitting by designation.

action clause controls, barring noteholders from bringing this suit.

## I.

The district court in its March 15, 2011 order laid out the long and litigious history among the parties in this appeal, so we confine our recitation of the facts to those most relevant to this appeal. Defendant-Appellant CompuCredit Holdings Corporation ("CompuCredit") is a publicly traded financial services provider that serves the subprime market. Additional Defendants-Appellants are CompuCredit insiders that fall within two groups: Officers and Directors. Plaintiffs are a collection of hedge funds that hold notes issued by CompuCredit; they allege to collectively own the majority of CompuCredit's notes and claim status as CompuCredit's creditors under the Uniform Fraudulent Transfers Act ("UFTA"). *See* O.C.G.A. § 18-2-70 et seq.[1]

Each series of CompuCredit's notes was issued pursuant to a trust indenture containing a standard "no-action clause."[2] The clause states that noteholders "may not pursue any remedy with respect to this Indenture or the Securities." However, the clause also contains two exceptions that a noteholder may fall within if it

---

[1] Georgia's Uniform Fraudulent Transfers Act is based upon and substantially similar to the Uniform Fraudulent Transfer Act, successor to the Uniform Fraudulent Conveyance Act.

[2] For the purposes of this appeal, the trust indentures governing each series of notes held by Plaintiffs are identical and shall be collectively discussed.

satisfies certain conditions precedent. The first exception, referred to by the parties as the "trustee demand exception," is satisfied if: (1) a noteholder gives the Trustee written notice that a Default[3] has occurred and is continuing; (2) holders of at least 25% of the notes make a written demand to the Trustee to pursue a remedy; (3) a noteholder agrees to indemnify or offer security to the Trustee for any costs incurred; (4) the Trustee does not respond to the request of the noteholders within sixty days of receipt of the notice and the offer of security or indemnity; (5) during the sixty-day window, the majority of the noteholders do not give the Trustee an instruction inconsistent with the request for a remedy. The second exception to the no-action clause is the "right to payment" exception, which is not at issue here. The trust indentures have a choice-of-law provision specifying that New York law governs the agreement.

In December 2009, Plaintiffs brought UFTA claims against CompuCredit.[4] Plaintiffs alleged that CompuCredit was in financial distress but had nevertheless issued a dividend to shareholders—the majority of whom were company insiders—and planned to spin off the company's profitable microloan lending business. Plaintiffs argued that these actions were fraudulent transfers intended to

_____

[3] Section 1.01 of the Indentures defines the term "Default." The parties agree that no Default has occurred here.

[4] Directors and Officers were added as defendants in May 2010.

4

benefit company insiders. Plaintiffs also asserted that CompuCredit was operating on the brink of insolvency and depleting its available funds, endangering its ability to redeem Plaintiffs' notes when they came due. In June 2010, each of the three groups of Defendants—CompuCredit, Directors, and Officers—individually filed a motion to dismiss. The Officers raised in their motion the argument that is at issue in this appeal: that the no-action clause in the trust indentures governing CompuCredit's notes barred Plaintiffs from bringing their claims. The Directors adopted and joined the motions to dismiss filed by the other Defendants. CompuCredit did not reference the no-action clause in its initial motion, but it stated in its reply brief: "As set forth in the opening brief and reply brief in support of [Officers'] Motion to Dismiss the Second Amended Complaint, Plaintiffs' claim also should be dismissed because Plaintiffs have not complied with the Indentures' requirements for bringing suit."

On March 15, 2011, the district court ruled on all the motions jointly, finding that although no-action clauses are generally upheld, the clause did not bar Plaintiffs' UFTA claims under the circumstances of this case. The court predicated its ruling on three factors it found to be determinative: (1) the noteholders bringing the suit constituted a majority of the noteholders, therefore satisfying the purpose of the clause to prevent suits not in the majority's best interest; (2) CompuCredit

5

announced its intent to pay a dividend less than sixty days in advance, thereby making it impracticable for Plaintiffs to satisfy the sixty-day waiting period requirement of the trustee demand exception; and (3) Plaintiffs' claims were extra-contractual and the terms of the clause contemplated a contractually-defined Default predicating a suit.

On April 1, 2011, the district court pursuant to 28 U.S.C. § 1292(b) certified the following question of law for interlocutory review:

> Under New York Law, may noteholders sue under Georgia's Uniform Fraudulent Transfer Act where the noteholders have not complied with the conditions precedent to filing suit specified in the "no-action clause" in the trust indentures governing the notes?

Defendants then petitioned this court for permission to file an interlocutory appeal regarding the certified question, and we granted Defendants the right to appeal.

## II.

As an initial matter, we must sort out which parties are proper participants in this appeal. Plaintiffs first challenge whether CompuCredit may appeal, given that it (1) did not join its co-Appellants in petitioning the district court to certify its March 15, 2011 order for interlocutory review and (2) only discussed the no-action clause in its *reply* brief in support of its motion to dismiss Plaintiffs' claims. Plaintiffs also contest whether Directors and Officers have the ability to argue for the applicability of the no-action clause, given that they are not parties to the trust

6

indentures. For the reasons stated below, we find that CompuCredit, Directors, and Officers are all proper parties to this appeal.

## A.

Plaintiffs point out that only Officers, not CompuCredit, petitioned the district court to certify its March 15, 2011 order denying Defendants' motions to dismiss; Plaintiffs argue that CompuCredit therefore cannot participate in this appeal.[5] This court generally only reviews final orders of the district court, but under some circumstances we have jurisdiction over interlocutory appeals. Relevantly, we have jurisdiction over a district court order not otherwise appealable if (1) a district judge states in the order that he is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and (2) application to appeal is made to this court within ten days of such an order. *See* 28 U.S.C. § 1292(b). On April 1, 2011, the district court, responding to Officers' motion to certify its order for interlocutory review under § 1292(b), issued an order granting

---

[5] Plaintiffs actually state in their brief that Officers and Directors filed a motion for interlocutory appeal, but that motion bears only Officers' names. Regardless, as our discussion below evidences, it is immaterial which parties filed the motion at the district court level. We include both CompuCredit and Directors in our discussion of this matter for the sake of completeness.

7

Officers' motion for certification and amended its March 15, 2011 order to state that the no-action clause question presented "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." On April 11, CompuCredit, Directors, and Officers jointly filed a notice of appeal to this court, requesting permission to appeal the amended order. We granted permission to appeal to all Defendants. We had jurisdiction to do so because both prongs of § 1292(b) had been satisfied: the district court had stated the required language in its order and Appellants had then filed an application for interlocutory appeal within ten days of that statement. For purposes of determining proper parties to this appeal, it is simply not relevant that the district court amended its Order at the request of Officers alone because we properly granted all Defendants the right to appeal.

Plaintiffs next contest whether CompuCredit has the ability to make its no-action clause argument given that it only cursorily discussed the issue in its reply brief in support of its motion to dismiss Plaintiffs' claims. Plaintiffs rely on *Thomas v. Crosby* for the proposition that an appellant's failure to press an argument before the district court forecloses that appellant's right to present the

8

argument on appeal. 371 F.3d 782, 800 (11th Cir. 2004).[6]  However, even if we

were to agree with Plaintiffs' proposition that the issue was not sufficiently raised

below, we do not join in its conclusion that appeal of the issue is prohibited.

*Thomas*, to which Plaintiffs cite, instructs that our circuit's "rule foreclosing

review of issues not presented below is not a jurisdictional limitation but is instead

a rule which may be abrogated in our sound discretion."  *Id.*; *see also First Ala.

Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1060 n.8 (11th

Cir. 1990)*.*

At the heart of this rule is the concept that "a court will not consider on

appeal for the first time a question that requires *development of factual issues*."

*Troxler v. Owens-Illinois, Inc.* 717 F.2d 530, 533 (11th Cir. 1983) (emphasis

added).  As the Supreme Court has articulated, our procedural scheme makes it the

sole province of lower courts to develop the factual record, and it is essential that

the issues of a case be fully argued below "in order that litigants may not be

surprised on appeal by final decision there of issues upon which they have had no

opportunity to introduce evidence."  *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.

---

[6] Here, it is unclear whether the district court considered the issue adequately raised. Although Officers, Directors, and CompuCredit all filed separate motions to dismiss, the district court's order addressed all Defendants jointly and did not specify that any of its holdings regarding the no-action clause were specific to any one party. Additionally, the district court's conclusions were rooted in principles of law that would have applied to all Defendants.

Ct. 719, 721 (1941).  Essentially, we seek to avoid prejudicing the parties.  *See Ochran v. United States*, 117 F.3d 495, 503 (11th Cir. 1997).  A second reason for the rule is a "concern for judicial economy."  *Id.*; *see also Roofing & Sheet Metal Servs. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982).

In the instant case, Officers and Directors raised the no-action clause issue below, arguing the same points that CompuCredit now wishes to assert.  CompuCredit seeks to address only issues already raised before the district court; none of its arguments would require development of the factual record.  Plaintiffs had the opportunity below to respond to and present evidence regarding the no-action clause question, and the district court had the opportunity to make findings of fact and legal conclusions.  Therefore, Plaintiffs would not be prejudiced were we to consider the precise issue raised by CompuCredit's co-appellants.  *See Ochran*, 117 F.3d at 503 ("There is no prejudice to the [defendant] in this case since it fully briefed all the issues that we address.")  Furthermore, in this case considerations of judicial economy would weigh *against* declining to consider this argument because the issues are fully briefed and ripe for appellate review.

We have previously identified some circumstances under which we have found it appropriate to exercise our discretion to hear issues not argued below:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it

10

would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984) (alteration, footnotes, and quotation marks omitted). This case presents a pure question of law that we believe was answered incorrectly below. Furthermore, the significant question presented in this appeal has general impact, given that it relates to a standard clause present in most indentures of this type. For the foregoing reasons, we find it appropriate to consider CompuCredit's appeal.

B.

Plaintiffs also argue that the applicability of the no-action clause cannot properly be asserted by persons—such as Officers and Defendants—who are not parties to the indentures containing that clause. A number of courts applying New York law have addressed this argument, both explicitly and implicitly, and have held that non-party defendants may still assert the no-action clause. *See Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 126–27 (3d Cir. 2006) (applying New York law) (finding no-action clause applicable despite plaintiff's argument

11

that defendant was not a party to the trust indenture); *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705, at *7 (N.D. Ill. Aug. 20, 2010) (applying New York law) (holding that no-action clause barred plaintiff from bringing suit against mortgage-servicer defendant who was not party to the trust indenture); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2008 WL 744823, at *17 (S.D. Tex. Mar. 19, 2008) (applying New York law) (stating that courts have allowed non-parties to enforce no-action clauses and citing in support *Lange v. Citibank, N.A.*, 2002 WL 2005728, at *6–7 (Del. Ch. Aug. 13, 2002) (applying New York law) and *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *8 (Del. Ch. June 2, 1992) (applying New York law)). In *Feldbaum*, the court explained that "in consenting to no-action clauses by purchasing bonds, plaintiffs waive their rights to bring claims that are common to all bondholders," and that waiver "applies equally to claims against non-issuer defendants as to claims against issuers." 1992 WL 119095, at *7. The court also pointed out that the clauses at issue in *Feldbaum*, like the clauses here, "explicitly make their scope depend on the nature of the claims brought, not on the identity of the defendant." *Id.* Here, Plaintiffs agreed to the terms of the no-action clause when they purchased the notes, and that clause bars the pursuit of "*any* remedy with respect to this Indenture or the Securities" (emphasis added). We therefore find that

Directors and Officers may assert that the no-action clause prevents Plaintiffs from bringing this suit.

## III.

CompuCredit, Officers, and Directors argue that the district court erred in denying their motions to dismiss Plaintiffs' claims because the court relied upon an incorrect finding of law—namely, that the no-action clause did not bar Plaintiffs' claims. We review *de novo* a district court's denial of a motion to dismiss. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1187 (11th Cir. 2002).

It is undisputed that the language of the no-action clause states that noteholders may not bring any actions with respect to the "Indenture or the Securities." It is also clear that Plaintiffs' suit relates to the trust indentures or the securities. The clause itself lists only two possible exceptions to its prohibition on suits—the trustee demand exception and the right to payment exception—and Plaintiffs acknowledge that they have not taken the steps required to qualify for either of the exceptions. Therefore, the question before us is whether the district court was correct in relying upon three alternative reasons to find the clause inapplicable, despite the background principle that no-action clauses have "generally been upheld by courts." *Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1289 n.9 (11th Cir. 2004).

13

A.

First, we must answer whether under New York law extra-contractual fraudulent transfer claims are exempted from the operation of the no-action clause.[7] This issue was addressed directly in *Feldbaum*, in which plaintiffs bringing fraudulent conveyance claims argued that no-action clauses apply only to claims for breaches of express indenture provisions. 1992 WL 119095, at *6. The Delaware Chancery Court rejected that argument, concisely stating: "The clause in question bars all action 'with respect to' the indenture or the securities. A fraudulent conveyance action is such an action." *Id.*, at *7. It explained that "'no-action' clauses in the indentures constitute waivers by plaintiffs" of their rights to bring claims relating to the securities, *id.* at *5, and instead vest those rights in the trustee (or in "the holders of a substantial amount of bonds," provided that the trustee has "the right to prosecute such a suit in the first instance"), *id.* at *6. The court reasoned that because the plaintiffs' fraudulent transfer claims "allegedly arise from transactions by issuers of their bonds and assert injuries arising from the bondholder status of plaintiffs . . . [,] [plaintiffs] are hurt derivatively . . . . and thus should share any remedy they receive on a *pari passu*

---

[7] Plaintiffs argue (and the district court found) that because the trustee demand exception contemplates an event of Default, the entire no-action clause only applies to claims predicated on a Default. We do not agree that the scope of an *exception* to a rule should necessarily define the scope of the rule itself.

14

basis with other bondholders." *Id.* at \*8.  Therefore, the claims could only be properly be brought by the trustee. *Id.*

The Delaware Chancery Court in *Lange* also dismissed fraudulent transfer claims of securityholders, finding that a no-action clause prevented their suit. 2002 WL 2005728, at \*5.  In that case, plaintiffs were holders of Fairwood Corporation's ("Fairwood") debentures and brought an action against the directors of Fairwood; Consolidated Furniture Company ("Consolidated"), a subsidiary of Fairwood; and affiliates of a company that allegedly controlled Fairwood. *Id.* at \*1.  Plaintiffs alleged that defendants had made fraudulent transfers by selling some subsidiaries of Consolidated at unfairly low prices. *Id.* at \*4.  Plaintiffs acknowledged that their debentures contained a no-action clause but argued that the clause did not apply to their claims. *Id.* at \*6.  The court summarized Plaintiffs' argument to be "that the [no-action clause] somehow does not apply to their claims, because the amended complaint attempts to state fraudulent conveyance claims and because the complaint alleges that Fairwood and Consolidated were either insolvent or on the brink of insolvency at all relevant times." *Id.*  The court responded that "[n]either of the Debentureholders' arguments helps them escape the clear import of [the no action-clause.]" *Id.*  It explained that *Feldbaum* controlled and that "the particular nature of a claim that is

15

asserted on behalf of the Debentureholders as a class is not determinative of the applicability of [the no-action clause]; what is determinative is whether the claim is one with respect to the Indenture or the Debentures themselves." *Id.* at \*7.

*Ernst v. Film Production Corp.*, 264 N.Y.S. 227 (N.Y. Sup. Ct. 1933) employed a similar logic. *Ernst* featured bondholder plaintiffs that—wishing to set aside allegedly fraudulent conveyances of contracts and property by the issuer to the defendant—petitioned the court to appoint a receiver of the property at issue. *Id.* at 228. Defendants argued that by the terms of the trust indenture, plaintiffs could not bring suit unless a prior demand had been made upon the trustee by the holders of a quarter of the outstanding bonds—a condition analogous to a condition of the trustee demand exception in the instant case. *Id.* The court framed the issue as: "If plaintiffs have no capacity to bring an action under the indenture, the question arises whether under the present form of action they may obtain a receiver pendente lite[.]" *Id.* It determined that the plaintiffs' claim related to the bonds and that plaintiffs were "presuming to speak for all the bondholders and not for themselves alone." *Id.* at 229. Therefore, the court found that the indenture condition barring suit applied to the action and ultimately denied plaintiffs' motion. *Id.* Courts applying New York law have consistently held, in accordance with the rationale of *Feldbaum*, *Lange*, and *Ernst*, that no-action

16

clauses bar fraudulent conveyance claims. *See, e.g.*, *Enron*, 2008 WL 744823, at *9; *McMahan & Co. v. Wherehouse Entm't, Inc.*, 859 F. Supp. 743, 749 (S.D.N.Y. 1994), *rev'd in part on other grounds*, 65 F.3d 1044 (2d Cir. 1995); *Victor v. Riklis*, 1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992).

Although courts applying New York law have found no-action clauses applicable as a general rule, they have been willing to abrogate that rule under one consistently acknowledged exception: when the trustee, by reason of conflict of interest or unjustifiable unwillingness, cannot properly pursue a remedy for trust beneficiaries. *See, e.g.*, *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 477–78 (S.D.N.Y. 2010) ("[I]t is well established under New York law that where . . . trustees are under a duty to enforce [a] claim and have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust, analogous to stockholders' derivative suits on behalf of a corporation." (internal quotation marks omitted)) (excusing failure to comply with the no-action clause where trustee allegedly violated its fiduciary duties); *Feldbaum*, 1992 WL 119095, at *7 ("I do not mean to imply that courts will apply no-action clauses to bar claims where misconduct by the trustee is alleged"). Because a standard no-action clause vests in the trustee all of the securityholders' rights to bring suit, making the trustee the only path to a remedy, courts have been unwilling to enforce

17

such clauses when the trustee's conflicts or irrationality bar that path to relief. As

the *Feldbaum* court explained:

> For the same reason that equity has long recognized that, in some
> circumstances, corporate shareholders will be excused from making a
> demand to sue upon corporate directors, but will be permitted to sue in
> the corporation's name themselves, bondholders will be excused from
> compliance with a no-action provision where they allege specific facts
> which if true establish that the trustee itself has breached its duty
> under the indenture or is incapable of disinterestedly performing that
> duty.

1992 WL 119095, at *7.

Given this established trustee misconduct exception, we find the present

case—involving no allegations of misdeeds by the Trustee—factually

distinguishable from cases in which claims are brought against the trustee.

Therefore, we reject Plaintiffs' reliance on *Howe v. Bank of N.Y. Mellon*, 783 F.

Supp. 2d 466 (S.D.N.Y. 2011) and *Metropolitan West Asset Management, LLC v.*

*Magnus Funding, Ltd.*, 2004 WL 1444868 (S.D.N.Y. June 25, 2004) ("Metro

West") because both of those cases involved allegations that the trustee had

breached its fiduciary duties. The court in *Metro West* acknowledged that the

presence of trustee misconduct was a determinative factor in its decision, stating

"*Feldbaum* . . . is inapplicable because there was no claim in that case that the

Trustee participated in any wrongdoing, as opposed to this case, where such

alleged wrongdoing is a central issue." 2004 WL 1444868, at *5 n.4. *Howe* relied

18

explicitly on *Metro West* in permitting plaintiffs to bring claims against the trustee, and the court explained it would "not presume that the parties intended to limit the noteholders' rights to sue on claims arising out of the *Trustee* allegedly taking extra-contractual action or breaching its fiduciary duties to the noteholders." 783 F. Supp. 2d at 474 (emphasis added). Because courts in the absence of allegations of trustee misconduct have adhered to the general rule that no-action clauses bar fraudulent conveyance claims, we find no persuasive reason to deviate from that rule in the present case.

### B.

Second, we must address whether Plaintiffs' majority ownership of the notes should serve as grounds to refuse to apply the no-action clause. In New York, contracts are construed to effectuate their purposes. *Bijan Designer for Men, Inc. v. Fireman's Fund Ins. Co.*, 705 N.Y.S.2d 30, 33 (N.Y. App. Div. 2000). An important purpose of no-action clauses is to "protect against the exercise of poor judgment by a single bondholder or a small group of bondholders, who might otherwise bring a suit against the issuer that most bondholders would consider not to be in their collective economic interest." *Feldbaum*, 1992 WL 119095, at *5–6 (reciting rationale for clause stated in *Commentaries on Indentures* § 5.7 at 232 (1971)). Therefore, Plaintiffs urge that "[e]nforcing the no-action clause in the

19

instant case would not serve the purposes for which it was placed in the Indenture."

*Whitebox Convertible Arbitrage Partners*, *L.P. v. World Airways, Inc.*, 2006 WL

358270, at *4 (N.D. Ga. Feb. 15, 2006).[8]

There are two problems with this argument urging us to look into the

purposes of the no-action clause. First, "a court must be concerned with what the

parties intended, *but only to the extent that they evidenced what they intended by*

*what they wrote*." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947 (5th Cir. Apr.

1981) (en banc) (applying New York law) (emphasis added).[9] In other words,

"[t]he best evidence of what parties to a written agreement intend is what they say

in their writing. Thus, a written agreement that is complete, clear and

unambiguous on its face must be enforced according to the plain meaning of its

---

[8] Plaintiffs also argue that because Section 6.05 of the indentures gives the majority the ability to direct the "time, method and place of conducting any proceeding for any remedy available to the Trustee" and Section 6.06(e) of the indentures gives the majority veto power over Trustee actions, the majority *de facto* controls litigation proceedings. Plaintiffs reason that demanding compliance with the other conditions of the trustee demand exception to the no-action clause is futile and serves no purpose because Plaintiffs hold ultimate control. However, Section 6.05 of the indentures also states that "the Trustee may refuse to follow any direction [by the majority] that conflicts with law or this Indentures or that Trustee determines is unduly prejudicial to the rights of other Securityholders or would involve the Trustee in personal liability. . . ." Therefore, the majority's right to control the *manner* in which a suit is brought and to veto suits brought by the Trustee does not equate to empowerment to direct all litigation decisions; majority ownership alone is not sufficient to eviscerate the need for compliance with the conditions of the trustee demand exception.

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

20

terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) (citation and internal quotation marks omitted). Here, the no-action clause's terms are absolute: noteholders "may not pursue any remedy with respect to this Indenture or the Securities" unless they complete the conditions precedent allowing them to fall within one of the two stated exceptions. It is true that majority ownership is one of the necessary elements to qualify for the trustee demand *exception* to the clause. Yet in addition to majority ownership, the exception also requires that noteholders (1) give the Trustee notice of a Default, (2) make a demand on the Trustee to pursue a remedy, (3) offer the Trustee reasonable security or indemnity, and (4) give the Trustee sixty days to take action before noteholders pursue remedies independently of the Trustee. Looking at the unambiguous text of the clause, we see no intent to allow noteholders to fall within an *exception* if they have not satisfied all the stated pre-conditions to that exception.

Second, even if we were to look outside the text of the clause and evaluate whether its purposes were fulfilled, Plaintiffs' arguments would remain unconvincing. Although one purpose of the no-action clause is to deter suits brought by the minority, other purposes of the clause are to "prevent rash, precipitate, or harassing suits by bondholders who disrupt corporate affairs," *Watts*

21

*v. Missouri-Kansas-Texas R.R. Co.,* 383 F.2d 571, 574 (5th Cir. 1967), and to protect the issuer from a multiplicity of lawsuits, *Quirke v. St. Louis-San Francisco Ry. Co.*, 277 F.2d 705, 709 (8th Cir. 1960). Majority ownership offers no guarantee that those purposes are fulfilled. We conclude that the plain language of the no-action clause gives no indication that majority ownership in and of itself is reason to allow noteholders to bring suit when they do not fall within a stated exception, and an examination of the purposes of the clause confirms that our conclusion is correct. We therefore reject the "novel proposition that a party to a contract should be excused from complying with a condition precedent merely because it was *capable* of compliance." *McMahan*, 859 F. Supp. at 749 (quoting the magistrate judge's report and recommendation).

C.

Third, we must address whether it is relevant that CompuCredit made it impossible for Plaintiffs to comply with one of the conditions of the trustee demand exception. Plaintiffs argue that because the trustee demand exception requires noteholders to wait sixty days after making a demand on the trustee and CompuCredit announced its dividends less than sixty days in advance, Plaintiffs were estopped from complying with the no-action clause when they sought to enjoin the issuance of dividends. The "prevention doctrine," upon which

22

Plaintiffs' argument relies, dictates that a party cannot insist that a condition precedent be performed when the non-performance was caused by the party itself. *See Bank of N.Y. v. Tyco Int'l Group, S.A.*, 545 F. Supp. 2d 312, 324 n.81 (S.D.N.Y. 2008). "Under such circumstances, the prevention doctrine will operate to excuse [a] condition precedent which was *wrongfully* prevented from occurring . . . ." *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 93 (S.D.N.Y. 1995) (emphasis added). The "prevention doctrine is substantially related to the implied covenant of good faith and fair dealing implicit in every contract." *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992). However, "the prevention doctrine does not apply where, under the contract, one party assumes the risk that fulfillment of the condition precedent will be prevented." *Mobile Commc'ns Corp. of Am. v. MCI Commc'ns Corp.*, 1985 WL 11574, at *4 (Del. Ch. Aug. 17, 1985); *see also Doherty v. Am. Home Prods. Corp.*, 2000 WL 777948, at *2 (2d Cir. June 15, 2000).

There are a number of grounds upon which we find the prevention doctrine inapplicable to the case at hand. First, the rationale behind the doctrine is that:

> One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.

23

*Ellenberg Morgan Corp. v. Hard Rock Café Assocs.*, 500 N.Y.S.2d 696, 699 (N.Y. App. Div. 1986) (quoting *3A Corbin on Contracts* § 767, p. 540). Here, CompuCredit escaped no duty by failing to give sixty-days notice; in fact, the conditions precedent at issue in this case are not pre-conditions to contractual duties of either party. Instead, they are conditions allowing Plaintiffs to fall within an exception to an agreed-upon contractual bar to suits brought by Plaintiffs. Plaintiffs fail to offer—and we cannot find—any cases to justify extending the prevention doctrine far beyond its established limits to apply under these circumstances.

Second, "[t]he key operative language in the definition of the prevention doctrine is the term 'wrongfully prevented.' If . . . defendant's alleged 'prevention' is authorized by the contract, then naturally it does not constitute a breach and cannot be considered 'wrongful.'" *A.I.C. Ltd. v. Mapco Petroleum Inc.*, 711 F. Supp. 1230, 1238 n.24 (D. Del. 1989). Even if the prevention doctrine were to apply in this case, Section 10.01 of the trust indentures requires CompuCredit to give only twenty-days notice before it issues a dividend. CompuCredit gave such notice. Therefore, CompuCredit complied with the terms of the contract and its act of giving less than sixty-days notice of a dividend was not wrongful.

IV.

We find unpersuasive all of the proffered reasons for deviating from the plain language of the no-action clause barring holders of securities from bringing any claims "with respect to this Indenture or the Securities." The clause itself identifies two exceptions to that rule—the trustee demand exception and the right to payment exception—and we have identified one judicial exception to the rule—when the trustee is accused of misconduct. None of these exceptions apply to the present case, but Plaintiffs urge us to find new exceptions. We find their arguments unconvincing.

The no-action clause here is not an individualized contract condition particular to these parties; it is a standard provision present in many trust indentures. As such, it "must be given a consistent, uniform interpretation." *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982) (discussing "boilerplate" contract language). Such uniform interpretation of standard contract language ensures effective functioning of our financial markets, *Broad*, 642 F.2d at 943, and begets stability, *Sharon Steel*, 691 F.2d at 1048. Because we find no persuasive, legally grounded reason to depart from the established law that no-action clauses are generally applicable, we REVERSE and REMAND for dismissal of Plaintiffs' claims.

**REVERSED and REMANDED.**