Hudson ES LLC v First Franklin Fin. Corp. (2025 NY Slip Op 50028(U))

[*1]

Hudson ES LLC v First Franklin Fin. Corp.

2025 NY Slip Op 50028(U)

Decided on January 15, 2025

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 15, 2025
Supreme Court, New York County

Hudson ES LLC, Plaintiff,

against
First Franklin Financial Corporation and MERRILL LYNCH MORTGAGE LENDING, INC., Defendant.

Index No. 656449/2018

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 were read on this motion for DISMISSAL .
This action arises from defendant First Franklin Financial Corporation's (First Franklin) alleged breaches of representations and warranties regarding certain mortgage loans. Plaintiff Hudson ES LLC (Hudson) is a minority certificateholder in the First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-FF1 (the Trust), which currently owns the loans. In motion sequence number 002, defendants move pursuant to CPLR 3211 (a) (1), (a) (3), and (a) (7) to dismiss the complaint. For the following reasons, the motion is granted, and the complaint is dismissed in its entirety.
I. BACKGROUND
The following facts are taken from plaintiff's amended complaint and assumed true for the purposes of this motion.
In 2005, First Franklin sold certain mortgage loans to nominal defendant Merrill Lynch Mortgage Lending, Inc. (MLML) pursuant to a Master Mortgage Loan Purchase and Interim Servicing Agreement (Transfer Agreement), in which First Franklin made certain representations and warranties about its origination practices and underwriting standards for the loans. In addition, First Franklin agreed that if "any breach of a representation or warranty . . . materially and adversely affect[ed] the value of a [loan] or [the loans]," First Franklin would cure the breach within 60 days of its discovery or receipt of notice of the breach or repurchase such loan (NYSCEF doc No. 12 at 36 [subsection 7.03]).
On January 1, 2007, MLML sold the loans to Merrill Lynch Mortgage Investors, Inc. (MLMI) pursuant to a Mortgage Loan Sale and Assignment Agreement (Sale Agreement), also conveying its rights pursuant to its Transfer Agreement with First Franklin. In the Sale Agreement, MLML "restated" First Franklin's representations and warranties about the subject loans for MLMI's benefit (NYSCEF doc No. 13 at 3 [subsection 1.04 (b) (iv)]).
On the same day, pursuant to a Pooling and Servicing Agreement (PSA), MLMI sold the loans to non-party LaSalle Bank National Association, as trustee for the Trust. In the PSA, MLMI assigned the loans and its rights to the Trustee, including its rights in the Transfer Agreement and the benefit of the repurchase obligations (NYSCEF doc No. 11 at 68 [section 2.01]).
Section 10.08 of the PSA sets out that "[n]o Certificateholder shall have any right . . . to [*2]institute any suit, action or proceeding in equity or at law upon or under or with respect to [the PSA]" unless certain conditions are satisfied (NYSCEF doc No. 12, § 10.08 [No-Action Clause]). These include all of the following:
(1) The certificateholder must have "previously . . . given to the Trustee a written notice of an Event of Default and of the continuance thereof,"
(2) "Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates" must have "made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder,"
(3) The Certificateholder must have "offered to the Trustee (individually and as trustee) such indemnity satisfactory to it as it may require against the costs, expenses, and liabilities to be incurred therein or thereby," and
(4) "[T]he Trustee, for sixty (60) days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding."
At some point, the Trust issued a number of certificates backed by the cash flow from the subject mortgage loans. In addition, at some point, U.S. Bank National Association (U.S. Bank or the Trustee) became the trustee of the Trust.
On October 30, 2018, the U.S. Bank informed the Trust's certificateholders of its belief that First Franklin had breached representations and warranties it made with respect to several thousand of the subject loans, and that, despite a notice sent to First Franklin to cure or repurchase the breaching loans, First Franklin had failed to repurchase most of the breaching loans.
On December 28, 2012, the Trustee entered into a Tolling Agreement with MLML, MLMI, and First Franklin, preserving all causes of action relating to the Trust against the counterparties in the Tolling Agreement until December 26, 2018.
Plaintiff, Hudson ES LLC (Hudson), is a certificateholder in the Trust. Plaintiff admits it lacks at least 25% of voting rights in the Trust (amended complaint ¶ 35, 37). At some unspecified time before December 26, 2018, Hudson sent the Trustee a letter (D&I) directing the Trustee file, on or before December 26, 2018, a claim in New York State Court on the Trust's behalf regarding First Franklin's breach of contract and agreed to indemnify the Trustee against the costs, expenses, and liabilities incurred in connection with the filing of complaint, to the extent they exceeded the Trust's cash flow.
On December 26, 2018, counsel for the Trustee informed Hudson's counsel that the Trustee declined to follow the directions contained in the D&I. That day, plaintiff initiated the instant action, purporting to bring suit derivatively on behalf of the Trust, asserting a single cause of action for breach of contract based on First Franklin's failure to repurchase the breaching mortgage loans. Plaintiff purports not to assert any claims against defendant MLML.
Defendants filed a motion to dismiss the complaint on June 21, 2019 (mot seq No. 001). Plaintiff amended its complaint on July 11, 2019, adding additional facts but continuing to assert a single cause of action for breach of the PSA. Defendants withdrew the motion.
On August 28, 2019, defendants filed the instant, second motion to dismiss the complaint in its entirety. Plaintiff opposes the motion.
II. DISCUSSION
Where a motion to dismiss is based on documentary evidence under CPLR 3211 (a) (1), the claim will be dismissed only "if the documentary evidence submitted conclusively [*3]establishes a defense to the asserted claims as a matter of law" (M & E 73-75, LLC v 57 Fusion LLC, 189 AD3d 1, 6 [1st Dept 2020]). "Thus, the defendant bears the burden of demonstrating that the proffered documentary evidence conclusively refutes the plaintiff's factual allegations" (Arco Acquisitions, LLC v Tiffany Plaza, LLC, 224 AD3d 798, 799 [2d Dept 2024]).
On a motion to dismiss under CPLR 3211 (a) (7), the court accepts the facts as alleged in the complaint as true, accords plaintiffs the benefit of any possible favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83 [1994]).
Plaintiff's breach of contract claim is essentially based on the Transfer Agreement, as assigned to the Trustee via the Sale Agreement and the PSA.
Beneficiaries of a trust may bring a suit on behalf of the trust, analogous to stockholders' derivative suits on behalf of a corporation, "[w]here a claim exists in favor of the trust . . . against third persons and the trustees . . . have improperly and unjustifiably failed to [enforce the claim]" (Velez v Feinstein, 87 AD2d 309, 314 [1st Dept 1982]). In such an action, "the beneficiary must show why he has the right to exercise the power, which the law and the trust agreement in the first instance confide in the trustees, to bring a suit on behalf of the trust" (id. at 315).
Seeking to dismiss the claim, defendants argue that, under section 10.08 of the PSA, plaintiff, as a certificateholder, is contractually barred from bringing this suit. They argue that, according to the pleadings, plaintiff has satisfied none of the preconditions in section 10.08 of the PSA to bringing a suit that arises from the PSA.
"[T]he purpose of the no-action clause [is] to avoid duplicative suits and protect the majority interests by mandating that actions be channeled through the Trustee" (Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 567 [2014]). Thus, the Court of Appeals has explained that no-action clauses generally "prevent[] minority securityholders from pursuing litigation against the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the securityholders" (id.). "[N]o-action clauses are to be construed strictly and thus read narrowly" (id. at 560).
Defendants argue, in part, that plaintiff has failed to show that "the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates" have "made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder" (No-Action Clause). Indeed, plaintiff admits that it has not met this threshold (amended complaint ¶ 33) and thus has failed to satisfy a condition precedent to its right to bring a suit arising from the PSA.
In opposition, plaintiff argues that defendant does not have standing to invoke the No-Action Clause as a defense to the complaint because it is not a party to or third-party beneficiary of the PSA.
Indeed, generally only parties to the contract, non-parties in privity of contract with parties to the contract, or third-party beneficiaries of the contract may enforce the terms of a contract (see Freeford Ltd. v Pendleton, 53 AD3d 32, 38 [1st Dept 2008]). Here, First Franklin does not satisfy any of those circumstances.
However, while the Appellate Division has not issued a definitive statement on the issue, recent caw law indicates the First Department's view that a non-party to a contract may invoke a plaintiff's failure to comply with the conditions of a no-action clause.
In ACE Sec. Corp. v DB Structured Prods., Inc. (112 AD3d 522, 522 [1st Dept 2013], [*4]affd 25 NY3d 581 [2015]), the defendant seller sold a group of mortgage loans to plaintiff ACE pursuant to a mortgage loan purchase agreement, which contained certain representations and warranties that were allegedly breached, as in the case at hand (see ACE Sec. Corp. v DB Structured Prods., Inc., 40 Misc 3d 562 [Sup Ct, NY County 2013], revd 112 AD3d 522 [2013]). Plaintiff then deposited the loans into a trust, and the trust issued certificates securing the loans pursuant to a pooling and servicing agreement. The agreement contained a no-action clause. When the trustee initially refused to sue on their behalf, two certificateholders commenced action against the seller themselves. The Appellate Division, First Department enforced the no-action clause against the plaintiff notwithstanding the fact that the seller was not a party to the agreement, finding that plaintiff had failed to satisfy the preconditions enumerated in the no-action clause (ACE Sec. Corp., 112 AD3d at 522).
Similarly, in FHFA v UBS Real Estate Sec., Inc. (No. 651959/2013, 2016 WL 1587344 [Sup Ct, NY County, Apr 12, 2016, Friedman, J.]), this court enforced a no-action clause against a non-party, citing ACE as well as the decisions of other jurisdictions on the same issue, observing that these decisions had "expressly rejected the argument that a non-party to the contract lacks standing to challenge a plaintiff's non-compliance with [a no-action] clause" (see Akanthos Capital Mgmt., LLC v CompuCredit Holdings Corp., 677 F3d 1286, 1292 [11th Cir 2012]; Peak Partners, LP v Republic Bank, 191 Fed Appx 118 [3d Cir 2006]; Feldbaum v McCrory Corp., 1992 Del Ch LEXIS 113, 1992 WL 119095 [Del Ch, June 2, 1992]). Justice Friedman accordingly held that defendants had standing to raise the issue of plaintiff's non-compliance with the no-action clause.
While plaintiff acknowledges Justice Friedman's decision in FHFA v UBS Real Estate, it argues that, to the extent Justice Friedman drew on the reasoning of Feldbaum, the policies animating Feldbaum should be limited to instances in which the issuer of certificates—the trust—invokes the no-action clause; and thus should be found inapplicable where the obligor to the trust invokes the no-action clause, as here. Plaintiff essentially argues that the danger that the certificateholder, in bringing suit against the trust, may dissipate the funds available to other certificateholders is not present where the suit is against the trust's obligor—that is, where the trust's funds are not being expended to defend against the suit.
However, in the court's view, the underlying policy behind Feldbaum applies equally here, where allowing certain individual certificateholders to bring suit in contravention of the Trustee's presumptively exclusive authority to do so could harm other certificateholders, as an adverse ruling here on the merits may be against their interest. Indeed, it is entirely consistent with the view of the Court of Appeals that "the purpose of the no-action clause [is] to avoid duplicative suits and protect the majority interests by mandating that actions be channeled through the Trustee" (Quadrant Structured Prods. Co., Ltd. v Vertin).
Further, the court finds the reasoning of the Delaware Court of Chancery in Feldbaum to be persuasive. In Feldbaum, the court concluded that, "in consenting to no-action clauses by purchasing bonds, plaintiff[] waive[s] [its] rights to bring claims that are common to all bondholders" and that the waiver "applies equally to claims against non-issuer defendants as to claims against issuers" (Feldbaum at *25). Thus, the court found that, "like other no-action clauses, the clauses at issue here explicitly make their scope depend on the nature of the claims brought, not on the identity of the defendant" (id. at *26).
Plaintiff alternatively argues that, even if defendants may enforce the No-Action Clause against plaintiff, the 25% voting rights requirement should be excused. Plaintiff argues that its [*5]allegations regarding First Franklin's conduct is sufficient to demonstrate that First Franklin has made compliance with the requirement impossible or impracticable, and that "a party may not insist upon performance of a condition precedent when its nonperformance has been caused by the party himself" (Ellenberg Morgan Corp v Hard Rock Cafe Assocs., 116 AD2d 266, 271 [1st Dept 1986]).
Here, plaintiff has alleged that, "on information and belief, First Franklin and/or its affiliates have acquired enough of the outstanding principal balance of Certificates, and/or paid holders of a sufficient portion of Certificates not to pursue the Trust's claims, to make it impossible or impracticable to garner sufficient support from Trust certificateholders to comply with the requirements of the No-Action Clause for an action against First Franklin" (amended complaint ¶ 35). It asserts that "First Franklin has deliberately narrowed and fragmented the pool of certificateholders willing and able to pursue efforts to institute claims against First Franklin" (id. ¶ 35). Plaintiff argues that, as a result, "it was impossible or impracticable for Hudson or any other certificateholder or group of certificateholders to comply with the requirements of the No-Action Clause" (id. ¶ 37).
However, even assuming plaintiff's allegations as true, plaintiff alleges no conduct that would excuse the express condition precedent of the No-Action Clause. "[T]he prevention doctrine, a variant of the implied covenant of good faith and fair dealing, is only applicable when it is consistent with the intent of the parties to the agreement" (Thor Props., LLC v Chetrit Group LLC, 91 AD3d 476, 477 [1st Dept 2012]). Unlike in the cases plaintiff cites, there is no allegation that other certificateholders could not be located (see Campbell v Hudson & M. R. Co., 277 AD 731, 735-36 [1st Dept 1951]) or that plaintiff was denied information about other certificateholders (see Sterling Fed. Bank, F.S.B. v Credit Suisse First Boston Corp., 2008 US Dist LEXIS 92759, *34 [ND Ill Nov. 14, 2008, No. 07-C-2922]). Neither does plaintiff allege that First Franklin prevented plaintiff from acquiring additional certificates. It is entirely consistent with the PSA for First Franklin to acquire certificates in the Trust. Further, excusing compliance with the 25% requirement would be inconsistent with the intent of the parties to the PSA to require the party seeking to bring action to have a certain threshold amount of voting rights.
Therefore, under the terms of the No-Action Clause of the PSA, without at least 25% of voting rights in the Trust, plaintiff cannot demand that the Trustee take action, and, having failed to satisfy the preconditions of bringing suit, plaintiff lacks standing to bring this breach of contract claim.
The court has considered plaintiff's other arguments and has found them unavailing.
Accordingly, it is
ORDERED that defendants' motion to dismiss the complaint is granted, and the complaint is dismissed in its entirety.
DATE January 15, 2025
ROBERT R. REED, J.S.C.